**In re Bonnie May SPEARS, Debtor.**

**In re Michael J. Sedgewick, Sr., Debtor.**

**In re Ronnie Lynn Gillis, Debtor.**

**In re Roger Alan Brehm, Debtor.**

**Nos. HT 03–00738, HT 03–01234, HT 03–01306, HT 03–03959.**

United States Bankruptcy Court, W.D. Michigan.

April 26, 2004.

Cody H. Knight, Kalamazoo, Michigan, for Bonnie Spears.

Michael E. Hall, Traverse City, Michigan, for Michael J. Sedgewick.

Patrick S. Fragel, Traverse City, Michigan, for Ronnie Lynn Gillis.

Paul I. Bare, Traverse City, Michigan, for Roger Brehm.

Ronald A. Schuknecht, Traverse City, Michigan, for the Chapter 7 Trustee.

## OPINION RE: TRUSTEE'S OBJECTION TO DEBTORS' CLAIMED EXEMPTIONS IN ENTIRETIES PROPERTY

JEFFREY R. HUGHES, Bankruptcy Judge.

The trustee in these Chapter 7 proceedings has objected to the claimed exemptions of property owned by the debtors pre-petition as tenants by the entirety with their non-filing spouses. Trustee's objection is sustained in part and denied in part. I conclude that the commencement of these bankruptcy proceedings severed the entireties estates. Consequently, each bankruptcy estate holds an undivided half interest in the subject property as a tenant in common with the non-filing spouse. The allowed Section 522(b)(2)(B)[1] exemption in each case will be the difference between the value of the bankruptcy estate's undivided half interest and the amount of joint obligations owed by each debtor and his or her non-filing spouse. Trustee shall administer whatever non-exempt value there is in the subject property for the benefit of all creditors.

### BACKGROUND

#### Bonnie May Spears

Bonnie May Spears filed her petition for relief under Chapter 7 of the Bankruptcy Code on January 21, 2003. James W. Boyd, a panel trustee, was appointed to administer the estate created when her petition was filed.

Ms. Spears is married. Included among the assets Ms. Spears owned immediately before the commencement of her Chapter 7 proceeding is an interest in real property located in Tustin, Michigan. She identified the Tustin property in her schedules

---

1. 11 U.S.C. § 522(b)(2)(B). The Bankruptcy Code is set forth in 11 U.S.C. §§ 101–1330.

Unless otherwise noted, all further statutory references are to the Bankruptcy Code.

as being owned as a tenant by the entirety with her non-filing spouse. She also indicated that the value of her interest in the property is $70,000[2] and that her interest is unencumbered. Ms. Spears claims that her entire interest in the Tustin property is exempt.[3] She asserts that her interest in the Tustin property is "NOT PROPERTY OF ESTATE. SEE IN RE: TRICKETT."[4] She also relies upon Mich. Comp. Laws Ann. § 600.6023(1)(h) as a basis for the exemption of her interest in this property.

On March 10, 2003, Trustee filed a timely objection to Ms. Spears' claimed exemption of her interest in the Tustin property. The relevant portion of his objection states:

5. The Trustee objects to the Debtor's exemptions based on the following:

a. The Debtor seeks to exempt the entire $70,000.00 value. Upon the filing of the Bankruptcy Case, the tenancy by the entireties is terminated and the property is then owned as tenancy in common between the Bankruptcy Estate and the Debtor's non-filing spouse. Since the property is owned as a tenancy in common, the Debtor is therefore limited to exempting at most half of the value of the property, but more probably $3,500.00 as set forth in MCL 600.6023.

b. MCL 600.6023(1)(h) allows the exemption by a Debtor of a maximum of $3,500.00. The Debtor in this case seeks to exempt $70,000.00 and such exemption is impermissible under the state as cited.

c. If the Debtors [sic] seeks to exempt the property as tenants by the entireties with her husband, the above-referenced claim of exemptions is improper because pursuant to *In re Trickett* 14 B.R. 85; 5 CBC 2nd 85 [(Bankr. W.D.Mich.1981)] (Bankruptcy Western District of Michigan) and *In re Grosslight*, 12 CBC 2nd 525; 757 F.2d 773 [(6th Cir.1985)], a Chapter 7 Trustee is allowed to administer property held as tenants by the entireties to the extent of any joint creditors.

### Michael J. Sedgewick, Sr.

Michael J. Sedgewick, Sr., filed his petition for relief under Chapter 7 of the Bankruptcy Code on January 31, 2003. Mr. Boyd was appointed to administer the bankruptcy estate created when his petition was filed.

Mr. Sedgewick is married. Included among the assets Mr. Sedgewick owned immediately before the commencement of his Chapter 7 proceeding is an interest in

---

**2.** Schedule A requires the debtor to provide the value of only the debtor's interest in the real property identified in that schedule. However, it is common in this district for the debtor to provide the value of the property as a whole even when the debtor owns only a fractional interest in the property. For purposes of this opinion, I am assuming that the $70,000 Ms. Spears has ascribed as the value of her interest in the property is in fact the combined value of her own interest and her husband's interest in the property. Consequently, the value of the interest that Ms. Spears is claiming as exempt is actually some fraction of $70,000. I am making the same assumption with respect to each of the exemptions claimed by the other debtors.

Trustee will need to verify whether my assumption is correct or not if he has not already done so. In any event, the validity of my assumption has no bearing on my analysis of whether Trustee's objections to the claimed exemptions should be sustained or not. If my assumption is wrong, the only consequence will be that the value available for Ms. Spears and the other debtors to claim as exempt will be larger.

**3.** Schedule C to Ms. Spears' Statement of Financial Affairs (Docket Entry No. 1).

**4.** *Michigan National Bank v. Chrystler (In re Trickett)*, 14 B.R. 85 (Bankr.W.D.Mich.1981).

property located in Rapid City, Michigan. Mr. Sedgewick identified the Rapid City property in his schedules as being owned as a tenant by the entirety with his non-filing spouse. He indicated that the value of his interest in the property is $120,000. He also indicated that his interest is subject to a $15,000 lien.[5]

Mr. Sedgewick claims that his entire interest in the Rapid City property is exempt.[6] He asserts that his interest in the Rapid City property is exempt pursuant to *In re Trickett,* 14 B.R. 85, with respect to individual creditors. He also relies upon Mich. Comp. Laws Ann. § 600.6023(1)(h) as a basis for the exemption of his interest in this property. Finally, Mr. Sedgewick indicates that he intends to reaffirm "joint debts."

On March 10, 2003, Trustee filed a timely objection to Mr. Sedgewick's claimed exemption of his interest in the Rapid City property. The objection is similar to the objection Trustee filed with respect to the exemption claimed by Ms. Spears.

### Ronnie Lynn Gillis

Ronnie Lynn Gillis filed his petition for relief under Chapter 7 of the Bankruptcy Code on February 3, 2003. Mr. Boyd was appointed to administer the estate created when his petition was filed.

Mr. Gillis is married. Included among the assets Mr. Gillis owned immediately before the commencement of his Chapter 7 proceeding is an interest in real property located in Hersey, Michigan. He identified the Hersey property in his schedules

as being owned as a tenant by the entirety with his non-filing spouse. He also indicated that the value of his interest in the property is $30,000 and that his interest is unencumbered.[7]

Mr. Gillis claims that his entire interest in the Hersey property is exempt. He asserted that his interest in the Hersey property is exempt pursuant to 11 U.S.C. § 522(b)(2)(B) and Mich. Comp. Laws Ann. § 600.6018.[8]

On March 6, 2003, Trustee filed a timely objection to the exemption claimed by Mr. Gillis in the Hersey property. The objection is similar to the objection Trustee filed with respect to the exemptions claimed by Ms. Spears and Mr. Sedgewick.

### Roger Alan Brehm

Roger Alan Brehm filed his petition for relief under Chapter 7 of the Bankruptcy Code on March 26, 2003. Mr. Boyd was appointed to administer the estate created when his petition was filed.

Mr. Brehm is married. Included among the assets Mr. Brehm owned immediately before the commencement of his Chapter 7 proceeding is an interest in real property located in Wexford County, Michigan. He identified the Wexford County property in his schedules as being owned as a tenant by the entirety with his non-filing spouse. He also indicated that the value of his interest in the property is $84,000 and that his interest is unencumbered.[9]

Mr. Brehm claims that his entire interest in the Wexford County property is exempt.[10] He asserts that his interest in

---

**5.** Schedule A to Mr. Sedgewick's Statement of Financial Affairs (Docket Entry No. 1).

**6.** Schedule C to Mr. Sedgewick's Statement of Financial Affairs (Docket Entry No. 1).

**7.** Schedule A to Mr. Gillis' Statement of Financial Affairs (Docket Entry No. 1).

**8.** Schedule C to Mr. Gillis' Statement of Financial Affairs (Docket Entry No. 1).

**9.** Schedule A to Mr. Brehm's Statement of Financial Affairs (Docket Entry No. 1).

**10.** Schedule C to Mr. Brehm's Statement of Financial Affairs (Docket Entry No. 1).

the Wexford County property is exempt pursuant to *Hoyt v. Winstanley,* 221 Mich. 515, 191 N.W. 213 (1922).

On May 22, 2003, Trustee filed a timely objection to the exemption claimed by Mr. Brehm in the Wexford County property. The objection is similar to the objection Trustee filed with respect to the exemptions claimed by the other three debtors.

*Hearing*

On August 1, 2003, a hearing was held concerning Trustee's objections to the exemptions claimed by Ms. Spears and Messrs. Sedgewick and Brehm.[11] I had issued a scheduling order prior to that hearing that identified three issues pertinent to the Trustee's objections:

1. Whether the filing of a bankruptcy petition by one spouse but not the other results in a severance of the entireties estate owned by the debtor and the non-filing spouse.

2. If a severance occurs, whether actuarial factors would require the two undivided interests to be unequal in size.

3. If a severance occurs, whether the debtor's undivided interest in the property must still be administered for the

exclusive benefit of the debtor's and non-filing spouse's joint creditors.

All of the parties filed pre-hearing briefs and I heard oral argument by all of the parties on August 1, 2003. No proofs were offered. I took each of the objections under advisement. All of the parties were given the opportunity to file post-hearing briefs. However, only Trustee and Ms. Spears availed themselves of this opportunity.

## DISCUSSION

■ An "estate" is created each time a bankruptcy proceeding is commenced. 11 U.S.C. § 541(a). Like a corporation or a trust, a bankruptcy estate is a distinct legal entity. *Farmer v. Crocker National Bank (In re Swift Aire Lines, Inc.),* 30 B.R. 490, 495 (9th Cir. BAP 1983); *In re Dow Corning Corp.,* 270 B.R. 393, 398–99 (Bankr.E.D.Mich.2001); *In re Roy Stanley, Inc.,* 217 B.R. 23, 25 (Bankr.N.D.N.Y. 1997); *In re SeaEscape Cruises, Ltd.,* 201 B.R. 321, 323 (Bankr.S.D.Fla.1996). The bankruptcy estate exists apart from the debtor. It acts through its legal representative, the bankruptcy trustee. 11 U.S.C. § 323(a).[12]

---

**11.** On July 14, 2003, Mr. Gillis amended his Schedule C to change his exemptions from the so-called state exemptions, 11 U.S.C. § 522(b)(2), to the so-called federal exemptions, 11 U.S.C. § 522(b)(1). The Federal Rules of Bankruptcy Procedure provide that a debtor may amend his schedules to change the exemptions claimed at any time. Fed. R.Bankr.P. 4003(a) and 1009(a). Consequently, Mr. Gillis' amendment to his Schedule C would appear to have rendered moot Trustee's objection to his claimed exemption in the Hersey property pursuant to 11 U.S.C. § 522(b)(2). However, Mr. Gillis appeared at the August 1, 2003 hearing to contest Trustee's objection to his exemption as originally claimed notwithstanding his amendment to Schedule C. I have not excluded Mr. Gillis from this opinion because of his appearance at the August 1, 2003 hearing.

**12.** The distinction between the bankruptcy estate and the debtor is quite clear in a Chapter 7 proceeding. 11 U.S.C. §§ 701–784. The distinction is not as clear in proceedings under other chapters of the Bankruptcy Code. In a non-railroad Chapter 11 proceeding, 11 U.S.C. §§ 1101–1146, the debtor, not a separate trustee, represents the bankruptcy estate as its "debtor-in-possession" unless the bankruptcy court replaces the debtor with a trustee. 11 U.S.C. §§ 1101(1), 1104(a), 1107. In a Chapter 12 proceeding, 11 U.S.C. §§ 1201–1231, a trustee represents the bankruptcy estate in some matters and the debtor, again as the estate's "debtor-in-possession," represents the bankruptcy estate in other matters unless the bankruptcy court removes the debtor as the bankruptcy estate's debtor-in-possession. 11 U.S.C. §§ 1202–1204. In a Chapter 13 proceeding, 11 U.S.C. §§ 1301–1330, a trus-

█ The bankruptcy estate is the foundation upon which the entire bankruptcy process rests.[13] When the bankruptcy trustee acts, she acts as the representative of the bankruptcy estate, not as a representative of the debtor. For example, if the bankruptcy trustee liquidates property of the estate pursuant to Section 363, she conveys title to that property on behalf of the bankruptcy estate, not on behalf of the debtor. *In re Quinn,* 299 B.R. 450, 454 (Bankr.W.D.Mich.2003). The bankruptcy estate may be a party to a contract. *See, In re Macomb Occupational Health Care, LLC,* 300 B.R. 270, n. 11 (Bankr.E.D.Mich.2003). The bankruptcy estate may also be liable for tortious conduct. *Id.*

█ The bankruptcy estate serves as the receptacle for all of a debtor's interests in property as of the date of the debtor's bankruptcy petition.

> (a) . . . Such estate is comprised of all of the following property, wherever located and by whomever held:
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the

debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

█ In a Chapter 7 proceeding, the debtor may recover from the property interests that have been transferred to the bankruptcy estate those interests that are eligible for exemption. 11 U.S.C. § 522(b). As for any non-exempt interests that remain, the Chapter 7 trustee, as the bankruptcy estate's representative, is charged with liquidating those interests and distributing the proceeds to the debtor's creditors with allowed claims against the estate. 11 U.S.C. §§ 704 and 726. *See also, In re Talbert,* 268 B.R. 811, 816 (Bankr. W.D.Mich.2001).

Ironically, the creation of a separate bankruptcy estate and the immediate transfer of the debtor's property into that newly created estate are so basic to bankruptcy law that they have become virtually transparent to the critical observer. While court after court will incant that a bankruptcy proceeding creates an estate and that all of the debtor's property becomes property of the estate, it is seldom that a court has actually paused to appreciate the profound effect these principles

tee represents the bankruptcy estate but the debtor and the trustee split the rights associated with the debtor's property (possession remains with the debtor although title transfers to the bankruptcy estate), the debtor shares with the trustee the authority to sell property of the estate, and the debtor shares with the trustee the authority to use the property of the estate for the ordinary course operation of the debtor's business, if any. 11 U.S.C. §§ 1302–1304. However, despite these differences, every Chapter 7, Chapter 11, Chapter 12, and Chapter 13 proceeding is based upon three common fundamentals: one, an "estate" is created at the outset of the bankruptcy proceeding; two, the bankruptcy estate is separate and distinct from the debtor himself; and three, the debtor's property is administered through the bankruptcy estate, not through the debtor.

13. Section 541 embodies the essence of the Bankruptcy Code. It creates the bankruptcy estate, which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court. Property belonging to the estate is protected from the piecemeal reach of creditors by the automatic stay of section 362. It is this central aggregation of property that promotes the effectuation of the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code. It is from this central core of estate property that the debtor's creditors will be paid.

5 *Collier on Bankruptcy,* ¶ 541.01 (15th ed. rev.1999).

have upon property law. However, in this instance, I must consider the application of these fundamental bankruptcy concepts, for they lie at the very center of the objections Trustee has raised.

Section 541 unequivocally states that "all legal or equitable interests of the debtor in property" constitute property of the estate. 11 U.S.C. § 541(a)(1).

> The scope of this paragraph [Section 541] is broad. It includes all kinds of property ... [I]t includes as property of the estate all property of the debtor, even that needed for a fresh start.

H.R.Rep. No. 95–595 at 367–68 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323–24. S.Rep. No. 95–989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868.[14]

Courts have consistently interpreted Section 541(a)(1)'s broad scope to include a debtor's interest in entireties property even if the debtor claims that interest as exempt. The Sixth Circuit has stated, "[i]t is now established law that this provision [Section 541(a)] brings entireties property into the bankruptcy estate." *Liberty State Bank v. Grosslight (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir.1985). *See also In re Hunter*, 970 F.2d 299, 305 (7th Cir. 1992); *Garner v. Strauss (In re Garner)*, 952 F.2d 232, 234 (8th Cir.1991); *Napotnik v. Equibank and Parkvale Sav. Ass'n.*, 679 F.2d 316, 318 (3d Cir.1982).

Michigan is one of a minority of states that still recognizes tenancies by the entirety. The United States Supreme Court itself recently described the characteristics of entireties property under Michigan law. *U.S. v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). Justice O'Connor wrote the majority opinion. Although long, Justice O'Connor's description is worth quoting in its entirety.

> English common law provided three legal structures for the concurrent ownership of property that have survived into modern times: tenancy in common, joint tenancy, and tenancy by the entirety. 1 G. Thompson, Real Property § 4.06(g) (D. Thomas ed.1994) (hereinafter Thompson). The tenancy in common is now the most common form of concurrent ownership. 7 R. Powell & P. Rohan, Real Property § 51.01[3] (M. Wolf ed.2001) (hereinafter Powell). The common law characterized tenants in common as each owning a separate fractional share in undivided property. *Id.*, § 50.01[1]. Tenants in common may each unilaterally alienate their shares through sale or gift or place encumbrances upon these shares. They also have the power to pass these shares to their heirs upon death. Tenants in common have many other rights in the property, including the right to use the property, to exclude third parties from it, and to receive a portion of any income produced from it. *Id.*, §§ 50.03–50.06. Joint tenancies were the predominant form of concurrent ownership at common law, and still persist in some States today. 4 Thompson § 31.05. The common law characterized each joint tenant as possessing the entire estate, rather

---

14. The law was different under the former Bankruptcy Act:

> Under the Bankruptcy Act of 1898, title would vest in the trustee only of property of the debtor which "prior to the filing of the petition he could by any means have transferred or which might have been levied on and sold under judicial process against him, or otherwise seized, impounded, or sequestered." Bankruptcy Act of 1898, Sec. 70(a)(5) (repealed 1979). Because property of the debtor held in the entireties cannot be transferred or levied upon by individual creditors, title did not vest in the trustee under the Act.

*Michigan National Bank v. Chrystler (In re Trickett)*, 14 B.R. 85, 88 (Bankr.W.D.Mich. 1981).

than a fractional share: "[J]oint-tenants have one and the same interest ... held by one and the same undivided possession." 2 W. Blackstone, Commentaries on the Laws of England 180 (1766). Joint tenants possess many of the rights enjoyed by tenants in common: the right to use, to exclude, and to enjoy a share of the property's income. The main difference between a joint tenancy and a tenancy in common is that a joint tenant also has a right of automatic inheritance known as "survivorship." Upon the death of one joint tenant, that tenant's share in the property does not pass through will or the rules of intestate succession; rather, the remaining tenant or tenants automatically inherit it. *Id.*, at 183; 7 Powell § 51.01. Joint tenants' right to alienate their individual shares is also somewhat different. In order for one tenant to alienate his or her individual interest in the tenancy, the estate must first be severed—that is, converted to a tenancy in common with each tenant possessing an equal fractional share. *Id.*, § 51.04[1]. Most States allowing joint tenancies facilitate alienation, however, by allowing severance to automatically accompany a conveyance of that interest or any other overt act indicating an intent to sever. *Ibid.*

A tenancy by the entirety is a unique sort of concurrent ownership that can only exist between married persons. 4 Thompson § 33.02. Because of the common-law fiction that the husband and wife were one person at law (that person, practically speaking, was the husband, see J. Cribbet et al., Cases and Materials on Property 329 (6th ed.1990)), Blackstone did not characterize the tenancy by the entirety as a form of concurrent ownership at all. Instead, he thought that entireties property was a form of single ownership by the mari-

tal unity. Orth, Tenancy by the Entirety: The Strange Career of the Common–Law Marital Estate, 1997 B.Y.U.L.Rev. 35, 38–39. Neither spouse was considered to own any individual interest in the estate; rather, it belonged to the couple.

Like joint tenants, tenants by the entirety enjoy the right of survivorship. Also like a joint tenancy, unilateral alienation of a spouse's interest in entireties property is typically not possible without severance. Unlike joint tenancies, however, tenancies by the entirety cannot easily be severed unilaterally. 4 Thompson § 33.08(b). Typically, severance requires the consent of both spouses. *id.*, § 33.08(a), or the ending of the marriage in divorce, *id.*, 33.08(d). At common law, all of the other rights associated with the entireties property belonged to the husband: as the head of the household, he could control the use of the property and the exclusion of others from it and enjoy all of the income produced from it. *Id.*, § 33.05. The husband's control of the property was so extensive that, despite the rules on alienation, the common law eventually provided that he could unilaterally alienate entireties property without severance subject only to the wife's survivorship interest. Orth, *supra*, at 40–41.

With the passage of the Married Women's Property Acts in the late 19th century granting women distinct rights with respect to marital property, most States either abolished the tenancy by the entirety or altered it significantly. 7 Powell § 52.01[2]. Michigan's version of the estate is typical of the modern tenancy by the entirety. Following Blackstone, Michigan characterizes its tenancy by the entirety as creating no individual rights whatsoever: "It is well settled under the law of this State that one

tenant by the entirety has no interest separable from that of the other, ... Each is vested with an entire title." *Long v. Earle,* 277 Mich. 505, 517, 269 N.W. 577, 581 (1936). And yet, in Michigan, each tenant by the entirety possesses the right of survivorship. Mich. Comp. Laws Ann. § 544.872(g) (West Supp.1997), recodified at § 700.2901(2)(g) (West Supp. Pamphlet 2001). Each spouse—the wife as well as the husband—may also use the property, exclude third parties from it, and receive an equal share of the income produced by it. See § 557.71 (West 1988). Neither spouse may unilaterally alienate or encumber the property, *Long v. Earle, supra,* at 517, 269 N.W., at 581; *Rogers v. Rogers,* 136 Mich.App. 125, 134, 356 N.W.2d 288, 292 (1984), although this may be accomplished with mutual consent, *Eadus v. Hunter,* 249 Mich. 190, 228 N.W. 782 (1930). Divorce ends the tenancy by the entirety, generally giving each spouse an equal interest in the property as a tenant in common, unless the divorce decree specifies otherwise. Mich. Comp. Laws Ann. § 552.102 (West 1988).

*Craft,* 535 U.S. at 279–82, 122 S.Ct. at 1421–22.

The Court was called upon in *Craft* to determine whether a federal tax lien could apply to a taxpayer's interest in property owned by the taxpayer and his spouse. Justice O'Connor used a bundle of sticks as a metaphor to explain the legal concept of property. "A common idiom describes property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property." 122 S.Ct. at 1420 (citing Judge Cardoza, *Paradoxes of Legal Science* 129 (1928)) Justice O'Connor then described the individual "sticks" that make up the "bundle" that Michigan law recognizes as an individual

spouse's interest in a tenancy by the entirety.

In determining whether respondent's husband possessed "property" or "rights to property" within the meaning of 26 U.S.C. § 6321, we look to the individual rights created by these state law rules. According to Michigan law, respondent's husband had, among other rights, the following rights with respect to the entireties property: the right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to sell the property with the respondent's consent and to receive half the proceeds from such a sale, the right to place an encumbrance on the property with the respondent's consent, and the right to block respondent from selling or encumbering the property unilaterally.

122 S.Ct. at 1422.

*Craft* involved federal tax law, not bankruptcy law. However, the metaphor used by Justice O'Connor to describe individual property rights is equally applicable in the context of a bankruptcy proceeding. There is no question that the bankruptcy estate is to include the debtor's interest in all types of property. However, the scope of Section 541(a)(1)'s reach is restricted to only the debtor's interest in the property. "[The bankruptcy] estate is comprised of ... all legal and equitable interests **of the debtor** in property as of the commencement of the case" 11 U.S.C. § 541(a)(1) (emphasis added). The rights that Justice O'Connor ascribed to an individual spouse's interest in entireties property were derived from Justice O'Connor's interpretation of Michigan law, not federal tax law. Therefore, there is every reason to believe that this same bundle of rights

would pass to the bankruptcy estate if that individual spouse elected at some point in time to file for relief under the Bankruptcy Code. In other words, the "sticks" that would transfer from the debtor to the bankruptcy estate would be only those property rights that belonged to the debtor. The separate bundle of property rights belonging to the debtor's spouse would remain outside the bankruptcy estate.[15]

■ However, Michigan law prohibits one spouse from conveying an interest in the entireties property without the consent of the other spouse. *Craft*, at 122 S.Ct. at 1424. *See also, Rogers v. Rogers*, 136 Mich.App. 125, 134–35, 356 N.W.2d 288 (1984); *Long v. Earle*, 277 Mich. 505, 517, 269 N.W. 577 (1936). How, then, can one spouse's interest in entireties property be transferred to a bankruptcy estate without the other spouse's consent? If one spouse

15. Under the common law, a husband and wife were considered to be one with respect to the joint ownership of property. Therefore, the thought of one spouse holding an interest in entireties property separate from the other spouse would never have occurred to an American or English jurist from an earlier era. However, as Justice O'Connor observed in *Craft*, tenancies by the entirety have evolved since the statutory recognition in the 19th century of a married woman's right to control and convey marital property. *Craft*, 122 S.Ct. at 1424. The common law conception of entireties property reflected the feudal idea that marriage united a man and woman into a single person, with that single person being the husband.

> A species of common-law concurrent ownership, tenancy by the entireties, developed as part of the English feudal system of land tenures. The exigencies of feudalism demanded that the functions of ownership be vested in males, presumably capable of bearing arms in war. Women were lightly regarded legally, and especially married women—whose very identifies, in most respects, were considered merged and lost in the personalities of their husbands. For purposes of property and of contract, the married woman was under a complete legal blackout termed coverture. **Man and wife were one and the one was male.**

Phipps, Tenancy by the Entireties 25, Temp. L.Q. at 24 (1951) (emphasis added).

Michigan courts have long recognized that the married women's property laws as enacted in Michigan abolished the common law fiction of a single marital entity:

> Now, however, and since the adoption of the constitution of 1850, and the act relative to the property of married women, already referred to, husband and wife no longer constitute a single person in contem-

plation of law. The wife may take, hold, and dispose of her separate property as though she were unmarried, and all rights and disabilities of either party growing out of the old doctrine of unity of person, have disappeared with the doctrine itself, which, being directly repugnant to both the letter and the spirit of these enactments, no longer exists.

*Fisher v. Provin*, 25 Mich. 347, 349 (1872).

The modern conception of entireties property is more akin to a joint tenancy in which both parties control the alienation of the fee interest and both parties have an indestructible right of survivorship. *See, e.g., Morgan v. Cincinnati Insurance Co.*, 411 Mich. 267, 307 N.W.2d 53 (1981) (Fitzgerald, concurring opinion).

How the concept of entireties property has changed over time is illustrated in Mich. Comp. Laws Ann. § 557.101. That section states:

> In all cases where husband and wife own any interest in land as tenants by the entirety, such tenancy by the entirety may be terminated by a conveyance from either one to the other of his or her interest in the land so held.

Mich. Comp. Laws Ann. § 557.101 (West 1988).

Under the common law, the notion of one spouse conveying his or her entireties interest to the other was unimaginable since the property was considered to be held by the "marital unit" as opposed to by the two individuals collectively. The problem of one spouse conveying to the other an interest in the entireties property became a problem only when the feudal notion of a "marital unit" was replaced with the current recognition that a husband and wife each own an undivided interest in the entireties property that is separate and distinct from the other's undivided interest.

cannot by deed unilaterally convey his or her interest in entireties property to a third party, how can the spouse unilaterally convey that very same interest to a bankruptcy estate by filing a petition for relief under the Bankruptcy Code?

■ The answer lies within Section 541 itself. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) is frequently cited for the proposition that courts are to look to state law to determine a debtor's property rights in a particular asset. *Id.*, 99 S.Ct. at 918. However, the Supreme Court did not hold that state law was to reign supreme with respect to such issues. Rather, the Supreme Court required that deference be given to state law in only those instances where Congress had chosen not to exercise its power to modify state law through its authority to establish "uniform Laws on the subject of Bankruptcies throughout the United States." *Butner*, 99 S.Ct. at 917 (quoting from the U.S. Constitution, Art. I, § 8, cl. 4).

> Unless some federal interest requires a different result, there is no reason why such interest [*i.e.*, property interest created under state law] should be analyzed differently simply because an interested party is involved in the bankruptcy proceeding.

*Butner*, 99 S.Ct. at 918. *See also, BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994) (when meaning of Bankruptcy Code's text is clear, its operation is unimpeded by contrary state law or prior practice).

The Court in *Butner* did not question Congress' constitutional authority under Article I to avoid as fraudulent or preferential transfers otherwise recognized as valid under state law. The Court also acknowledged Congress' authority to modify the rights of a mortgagee with respect

to rents and profits in property once it had become property of the bankruptcy estate. Indeed, the only question in *Butner* was whether Congress had in fact exercised its authority to modify a mortgagee's rights to rents or profits. The Court concluded that Congress had not; therefore, state law controlled. *Id.*, 99 S.Ct. at 917–918.

Section 541(c)(1) states:

> ... [A]n interest of the debtor in property becomes property of the estate under subsection (a)(1) ... notwithstanding any provision in an ... applicable nonbankruptcy law—

11 U.S.C. § 541(c)(1).

Congress enacted Section 541(c)(1) to facilitate the transfer of all of a debtor's interests in property described in Section 541(a)(1) from the debtor to the newly created bankruptcy estate.

> Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor will become property of the estate.

S.Rep. No. 95–989 at 83 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5869; *see also,* H.R.Rep. No. 95–595 at 176–77 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6325.

If Section 541(c)(1) did not exist, a debtor's interest in property held as a tenant by the entirety with a non-debtor spouse could not become property of the estate, for *Butner* directs that the void which would be left by the absence of Section 541(c)(1) is to be filled by state law and the applicable law in Michigan clearly prohibits a debtor from transferring his interest in the entireties property without the consent of his spouse. *Craft*, 122 S.Ct. at 1422. However, because Section 541(c)(1) overrides all restrictions imposed by state law upon the transfer of a debtor's interest in property from the debtor to the newly created bankruptcy estate, and because the enactment of Section 541(c)(1) is within Congress' constitutional authority under

Article I, *Butner* directs courts to ignore contrary Michigan law and to instead treat a debtor's interest in entireties property as having been transferred from the debtor to the bankruptcy estate upon the commencement of the debtor's bankruptcy proceeding.[16]

■ However, Section 541(c)(1)'s override of applicable state law to permit the unilateral transfer of a debtor's undivided interest in entireties property to the bankruptcy estate prompts another question: What is the nature of the undivided interest once it has been transferred into the bankruptcy estate? Michigan law clearly states that only a husband and wife can own property as tenants by the entirety.

> In Michigan, as the above decisions and others of similar import clearly show, it [a tenancy by the entireties] differs from ordinary joint tenancy in that the marital relation is an essential incident.

\*   \*   \*   \*   \*   \*

**16.** One court has held that the commencement of a bankruptcy proceeding and the attendant transfer of the debtor's interests into the bankruptcy estate is not a "conveyance." *In re Benner*, 253 B.R. 719, 721–22 (Bankr.W.D.Va.2000). In *Benner*, the debtor and her male friend lived together but were not legally married. Nonetheless, the couple acquired real property together. The deed described their ownership as "tenants by the entirety in fee simple with survivorship as at common law." *Id.* at 720. The debtor's friend passed away after the debtor filed her petition for relief. The bankruptcy trustee took the position that her friend's death resulted in the bankruptcy estate acquiring the entire fee in the property because the debtor's survivorship rights in the property transferred to the bankruptcy estate. However, the executrix of the friend's probate estate argued that the bankruptcy estate owned only a one-half interest in the property and that the deceased friend's heirs owned the other half. The executrix's theory was that the commencement of the debtor's bankruptcy proceeding severed the joint tenancy and replaced it with a tenancy in common.

The court in *Benner* rejected the executrix's argument:

> The estate argues that the filing of the Debtor's Chapter 7 petition constituted a conveyance which converted the Chapter 7 Debtor's interest and Benner's interest into a tenancy in common as if the joint tenancy was severed by a sale of either of the joint tenants of their joint interest in the property. *Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984), is cited for the proposition that a joint tenant can sell his interest in the joint tenancy and create a tenancy in common between his grantee and the remaining joint tenant. The Estate's argu-

ment fails because there is no authority for the proposition that the filing of a Chapter 7 bankruptcy petition constitutes a conveyance of title to the Chapter 7 trustee which would sever the joint tenancy. Congress eliminated the provisions of the old Bankruptcy Act which vested "title" in the Chapter 7 trustee by operation of law. Thus, the concept of "title" in the Chapter 7 trustee as a basis for determining what property the trustee will administer in a Chapter 7 proceeding ended with the enactment of the Bankruptcy Reform Act of 1978. 11 U.S.C. § 541(a) is clear that the filing of a Chapter 7 proceeding "creates an estate." What Congress intended in enacting 11 U.S.C. § 541(a) is to capture, as of the date of the filing of the petition "all legal or equitable interests of the debtor in property."

*Id.* at 721–22.

*Benner* is simply wrong. Section 541 leaves no room for such sophistry. There is absolutely no question that a conveyance occurs between the debtor and the bankruptcy estate whenever a bankruptcy proceeding is commenced.

> The commencement of a bankruptcy case creates an estate. Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case.

H.R.Rep. No. 95–595 at 175 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323.

S.Rep. No. 95–989 at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5869.

Indeed, the legislative history specifically states that "[t]he debtor's interest in property also includes 'title' to property, which is an interest, just as are a possessory interest, or leasehold interest, for example." *Id.*

Obviously, if the theoretic unity of the spouses is destroyed, in other words if the marital relation is terminated, the estate by the entireties may not continue as such.

*Budwit v. Herr,* 339 Mich. 265, 273, 63 N.W.2d 841 (1954). *See also, Field v. Steiner,* 250 Mich. 469, 477, 231 N.W. 109 (1930); *Hoyt v. Winstanley,* 221 Mich. 515, 519, 191 N.W. 213 (1922).

However, as already discussed, the commencement of a bankruptcy proceeding changes the ownership of entireties property. The owners of the undivided interests in the estate are no longer the debtor and the debtor's spouse. The owners are instead the bankruptcy estate and the debtor's spouse. Logic begs, if not screams, for the question: How can the interest that the bankruptcy estate has acquired from the debtor continue to be held by the entirety with the debtor's spouse? The bankruptcy estate is not married to the debtor's spouse. The bankruptcy estate is not even a natural person.

Neither the Michigan legislature nor the Michigan courts have addressed the specific problem posed by the federally-directed transfer of a debtor's interest in property whenever a bankruptcy proceeding is commenced by or against the debtor.[17] I have not found a Michigan statute or court opinion that allows a federally created bankruptcy estate to continue holding a debtor's undivided interest in entireties property as a tenant by the entirety with the debtor's non-filing spouse in contravention of the well accepted rule in Michigan that only a husband and wife may own property in that manner.[18] However, I have found Michigan law concerning the treatment of entireties property in analogous situations. It strongly suggests that Michigan courts would treat the filing of a bankruptcy petition under the Bankruptcy Code by one or both spouses holding property as tenants by the entirety as causing a severance of that tenancy and its replacement with a tenancy in common.[19]

17. The Bankruptcy Code makes no distinction between voluntary and involuntary bankruptcy petitions with respect to when the bankruptcy estate is created. If a debtor's creditors elect to file an involuntary petition against him, a bankruptcy estate is immediately created and his property is transferred to that estate. 11 U.S.C. §§ 303(b) and 541(a). Moreover, the separate bankruptcy estate will continue in existence even if the debtor objects to the involuntary proceeding. It will cease to exist only if the debtor successfully challenges the involuntary proceeding and procures from the court an order dismissing the involuntary petition. 11 U.S.C. §§ 303(h) and 349(b); Fed.R.Bankr.P. 1011 and 1013.

18. The absence of any Michigan law on point is not surprising. First, the issue of whether the commencement of a bankruptcy proceeding severs the entireties estate is relatively new. It arose only because of the change in law precipitated by the enactment of the Bankruptcy Code in 1978. Under the former Bankruptcy Act, a debtor's interest in entire-

ties property did not transfer to the bankruptcy estate; rather, the debtor continued to own it himself. *In re Trickett,* 14 B.R. at 88. Second, the federal courts that have addressed the effect of Section 541 upon entireties property have all held that the commencement of a bankruptcy proceeding does not sever the entireties estate provided the interest is ultimately returned to the debtor as a Section 522(b)(2)(B) exemption. It is likely as not that the state courts have accepted these decisions as controlling interpretations of federal law that render pointless further consideration of state law principles.

19. The Sixth Circuit has established the procedure a federal court must follow in order to determine the controlling law when a question of state law is at issue:

[A] federal court must apply the law of the state's highest court. If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from "all relevant data." Relevant data include the state's

Severance is not often discussed in the context of tenancies by the entirety because of the restrictions imposed by Michigan law against unilateral conveyances by either interest holder in the tenancy. However, at least two situations do arise under Michigan law where a tenancy by the entirety may be severed or otherwise reconfigured without the consent of both interest holders. First, Michigan law permits a husband and wife to own property as tenants by the entireties only for as long as the marital relationship exists. If the two interest holders divorce, the tenancy by the entireties is terminated. Unless the judgment of divorce provides otherwise, the effect of their divorce is to transform their co-tenancy from a tenancy by the entirety to a tenancy in common. Mich. Comp. Laws Ann. § 552.102 (West 1988). Second, Michigan law prohibits a person who has murdered his or her spouse to succeed as the survivor to whatever the couple had owned as tenants by the entirety prior to the spouse's murder. Rather, the murderer is permitted to take only an undivided one-half interest in the subject property as a tenant in common. The other undivided half is left to pass to the murdered spouse's heirs either by will or by intestacy. *Goldsmith v. Pearce*, 345 Mich. 146, 75 N.W.2d 810 (1956).[20]

These two exceptions challenge the commonly held notion that a tenancy by the entireties is indestructible absent the death of one spouse or the consent of both. Each illustrates an instance where the state of Michigan, either through its legislature or its courts, has modified the common law strictures of entireties property. To the extent that tenancies by the entirety have survived in Michigan, they have survived at the pleasure of Michigan's elected institutions. If a statute were enacted in Michigan tomorrow that abolished tenancies by the entirety, then tenancies by the entirety in Michigan would be no more, at least prospectively.

I am satisfied that the Michigan Supreme Court would approach the problem presented by Section 541 upon the entireties estate as simply another collision of the past with the present. Specifically, I am satisfied that the Michigan Supreme Court would evaluate the effect of Section 541 upon the respective interests of the debtor and non-filing spouse in entireties property in the same manner as it would evaluate the effect of a divorce upon entireties property owned by a former husband and wife. As already discussed, Michigan law severs the entireties estate

appellate court decisions: [W]e are mindful that an intermediate appellate court's judgment that announces a rule of law is a "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Finally, relevant data also include the state's supreme court *dicta*, restatements of law, law review commentaries, and the majority rule among other states.
*Garden City Osteopathic Hospital v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995) (citations omitted).

**20.** Given the modern conception that each spouse owns a separate interest in property

owned by the entireties, the possibility also exists that one spouse could convey his or her undivided interest in the entireties property with the consent of the other but without the other interest being conveyed as well. The result would be a new tenancy between the spouse who did not convey an interest and the transferee of the undivided interest that had been conveyed. Although I have found no Michigan law on point, it is reasonable to conclude that the new tenancy would not be a tenancy by the entireties because the new co-tenants would not have the requisite marital relationship. Rather, the two co-tenants would likely be treated as having undivided one-half interests in the property as tenants in common absent a contrary intention between the parties.

and replaces it with a tenancy in common if the marital relationship is terminated by a judgment of divorce. Mich. Comp. Laws Ann. § 552.102. The outcome is the same whether the divorce is contested or not. In other words, the entireties estate is terminated regardless of whether the defendant spouse consents to the divorce.

I see no reason why the Michigan Supreme Court would not conclude that the same result would occur under Michigan law whenever one spouse files a bankruptcy petition. Granted, a judgment in a contested divorce eliminates the marital relationship between the two co-tenants by terminating the marital relationship whereas a bankruptcy petition eliminates the marital relationship between the two co-tenants by substituting a bankruptcy estate for one or both of the spouses. However, the distinction is irrelevant. What is important is that in each instance the *sine qua non* of Michigan entireties property, the existence of a marital relationship between the two co-tenants, has been eliminated. If Michigan law will not permit the continuation of the entireties estate whenever the requisite marital relationship is terminated in a contested divorce, it is reasonable to conclude that Michigan law will similarly not permit the continuation of the entireties estate whenever the marital relationship is eliminated by the transfer of one spouse's interest to a bankruptcy estate upon the commencement of that spouse's bankruptcy proceeding. The result in each instance will be the severance of the entireties estate and its replacement with a tenancy in common.

I have considered the alternative of creating an exception to the longstanding rule

in Michigan that only a husband and wife may own entireties property. Given the absence of any Michigan law on point, it is within my prerogative to conclude that the Michigan Supreme Court itself would solve the problem posed by Section 541 by simply preserving the entireties estate for some indeterminate amount of time following the commencement of a bankruptcy proceeding by one or both of the tenants. Indeed, the only state court decision that I have found which addresses the effect of a bankruptcy proceeding upon entireties property suggests that creating such an exception is appropriate. *Schwab v. Krauss*, 165 A.D.2d 214, 566 N.Y.S.2d 974 (3rd Dept.1991).

*Schwab* involved property owned by the entirety under New York law. The debtors who owned the property had filed a joint petition for relief under the Bankruptcy Code. One of the owners died while the property was being administered by the two bankruptcy estates.[21] The bankruptcy estate of the surviving owner then sold the property. A creditor of the deceased owner whose claim had not been discharged sued the new owners on the theory that he had a judgment lien against the property. He contended that the entireties estate was severed when the owners of the property filed their joint petition and that, therefore, the surviving spouse's bankruptcy estate was able to convey only an undivided half interest in the property to the purchasers.[22]

The court rejected the creditor's argument. While it recognized that the effect of the owners' joint petition was to transfer each of their interests in the entireties

---

**21.** Although the debtors filed a joint petition, a separate bankruptcy estate was still created for each spouse. *See* Fed.R.Bankr.P. 1015.

**22.** *Schwab* does not explain why a creditor of the deceased debtor, and not the bankruptcy

estate of the deceased debtor, was pursuing this claim. Presumably, the trustee of the deceased debtor's bankruptcy estate elected to abandon whatever interest the bankruptcy estate had in the subject property.

property to two separate bankruptcy estates, the court concluded that the transfers were not enough to terminate the survivorship rights that each debtor had held in that property pre-petition.

Despite defendant's assertion to the contrary, we cannot conclude that these transfers by way of the joint petition had the same effect as a joint consensual conveyance of the property, which clearly would have terminated the entireties estate. The purpose of the joint bankruptcy petition is merely to ease administration and, in the absence of an order from the Bankruptcy Court consolidating the Abrahamses' estates, such estates existed separately in the hands of the trustee. Thus, each estate contained what was essentially a survivorship interest.

*Id.,* 566 N.Y.S.2d at 976 (citations omitted).

*Schwab,* though, is distinguishable. A tenancy by the entirety in New York is different from a tenancy by the entirety in Michigan. Each has the same common law heritage. However, the New York courts have interpreted the effect of the so-called married women's property acts upon common law tenancies by the entirety differently than have the Michigan courts. The New York courts have concluded that these laws eliminated the common law prohibition against one spouse conveying his or her interest in the entireties estate without the consent of the other. For example, in New York, a husband may at any time transfer to a third party his undivided life estate in the property and his right to survivorship in the fee without destroying the tenancy by the entirety. The transferee shares the life estate as a tenant in common with the non-consenting spouse. The transferee also takes subject to the non-consenting spouse's right to the entire fee in the event she survives her husband. *Finnegan v. Humes,* 252 A.D. 385, 299 N.Y.S. 501, 503 (4th Dept.1937); *VRW, Inc. v. Klein,* 68 N.Y.2d 560, 510 N.Y.S.2d 848, 851, 503 N.E.2d 496 (2d Dept.1986); *Lawriw v. City of Rochester,* 14 A.D.2d 13, 217 N.Y.S.2d 113, 114 (4th Dept.1961).[23] In effect, what the New York courts now recognize as a tenancy by the entirety is more akin to what is recognized in Michigan as a "joint tenancy with full right of survivorship" or a "joint life estate with dual contingent remainders."[24]

**23.** A co-tenant of an entireties property owned in New Jersey or Massachusetts may also convey his undivided interest in the property without severing the entireties estate. *See, e.g., Drury v. Abdallah,* 46 B.R. 718, 719 (D.Mass.1984), appeal dismissed, 778 F.2d 75 (1st Cir.1985), *cert denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 657 (1986); *Mueller v. Youmans (In re Youmans),* 117 B.R. 113, 116–17 (Bankr.D.N.J.1990).

**24.** Joint tenancy with full right of survivorship has essentially the same characteristics as joint tenancy except that survivorship may not be severed by a conveyance. To put it a different way, survivorship can only be destroyed by an act of all the parties. *E.g., Ames v. Cheyne,* 290 Mich. 215, 287 N.W. 439 (1939). A joint tenancy with full right of survivorship may also be thought of as a "joint life estate with dual contingent remainders," a phrase which more vividly describes what the parties to this form of concurrent ownership hold. *Butler v. Butler,* 122 Mich. App. 361, 332 N.W.2d 488 (1983). A conveyance by one or more of the joint tenants with full rights of survivorship to a third party will give the third party and the remaining joint tenants joint life estates and the right to use the property. However, upon the death of all but one of the original joint tenants, the title to the property vests in the surviving original joint tenant or his or her grantee. *Schulz v. Brohl,* 116 Mich. 603, 74 N.W. 1012 (1898). The life span of the grantees has no bearing whatsoever on the survivorship feature. In other respects, joint tenancy with full right of survivorship is similar to joint tenancy. *Cf. Midgley v. Walker,* 101 Mich. 583, 60 N.W. 296 (1894).

In contrast, the Michigan courts have concluded that the married women's property acts did not have as profound an impact upon a tenancy by the entirety. The Michigan courts have continued to adhere to the common law precepts that no aspect of the entireties estate may be conveyed or encumbered without the consent of both spouses notwithstanding the enactment of those statutes. *Craft*, 122 S.Ct. at 1424. Similarly, the Michigan courts have continued to treat the survivorship rights associated with entireties property as incidents of the common law estate as opposed to contingent remainder interests that may exist separately. *Budwit*, 339 Mich. at 272–73, 63 N.W.2d 841. Consequently, while it is possible for courts applying New York law to conclude that the entireties estate is technically preserved even when the persons currently enjoying the property are not husband and wife,[25] courts applying Michigan law cannot reach the same conclusion. It is simply impossible under Michigan law as it is currently interpreted for anyone other than a husband and wife to own any portion of the undivided interest in the entireties property and still have the property treated as entireties property.[26]

My conclusion that the entireties estate cannot survive under applicable Michigan law when one of the owners files a bankruptcy proceeding does not mean that the tenancy must necessarily be destroyed. Again, *Butner* requires that a bankruptcy court look to the state law for purposes of determining property rights only to the extent the Bankruptcy Code or other applicable federal law is silent. What has caused the alteration of the debtor's and the non-filing spouse's rights in the entireties property in each of the cases before me is federal law. Specifically, it is Congress' enactment of Section 541 that compels the conclusion that property owned by a debtor and his spouse pre-petition in Michigan as tenants by the entirety can no

---

1 *Cameron*, Michigan Real Property Law (2d ed.) § 9.11, p. 306.

**25.** Under New York law, it is possible for property to continue to be held as a tenancy by the entirety even though the persons currently enjoying the property are complete strangers. Indeed, that was the situation in *Schwab*, since the effect of the joint petition was to transfer one spouse's interest in the entireties property to one bankruptcy estate and to transfer the other spouse's interest to a separate bankruptcy estate. In reality, the question in *Schwab* was whether the filing of the joint petition manifested the requisite intent on the part of both debtors to destroy the contingent remainders that otherwise would have survived had, for example, only one debtor filed a bankruptcy petition and therefore only one spouse's life estate and contingent remainder interest passed to a bankruptcy estate. However, in Michigan, a court would never be confronted with that problem since Michigan does not allow any person other than a husband and wife to own any incident of the entireties estate.

**26.** *Craft* can be reconciled with the Michigan version of entireties property. The Court in *Craft* specifically observed that the federal tax lien attached to the taxpayer's interest in the entireties property notwithstanding the fact that the interest could not be unilaterally alienated. 122 S.Ct. at 1423. In effect, the Court simply held that whatever rights the taxpayer had in the entireties property would be considered property for purposes of the federal tax lien statute. Whether characterized as an expectancy, a restricted right, or something else, the Court was satisfied that whatever the taxpayer had was sufficient to fall within the reach of Section 6321 of the Internal Revenue Code. Consequently, it is possible for the federal tax lien that was the subject of *Craft* to exist without doing violence to the unique characteristics of entireties property under Michigan law. However, the same cannot be said for Michigan entireties property under the Bankruptcy Code. A tenancy by the entirety simply cannot continue to exist under Michigan law once the required transfer occurs under Section 541 and the bankruptcy estate replaces the debtor as a co-tenant of the property.

longer be owned in that manner once the bankruptcy has been commenced. It follows then that Congress could further modify Michigan law if it so chose to permit the entireties estate to continue during the pendency of the bankruptcy estate notwithstanding the absence of a marital relationship between the non-filing spouse and the bankruptcy estate. The question, then, is whether Congress intended this result when it enacted the Bankruptcy Code.

The Bankruptcy Code itself is the best source for ascertaining Congress' intent with respect to the character of entireties property once the debtor's interest has transferred to the bankruptcy estate. Debtors in the instant proceedings in fact cite Section 522(b)(2)(B) as evidence of Congress' intent to continue the entireties estate notwithstanding the commencement of a bankruptcy proceeding. They argue that a severance of the entireties property at the inception of the bankruptcy proceeding would render this section meaningless.

Debtors cite *In re Ford,* 3 B.R. 559 (Bankr.D.Md.1980) in support of their argument. In *Ford,* the debtor and his non-filing spouse, who resided in Maryland, owned their home as tenants by the entirety. Maryland's law regarding tenancies by the entirety is similar to that of Michigan. The debtor claimed his interest in the entireties property as exempt pursuant to Section 522(b)(2)(B). The trustee objected to the exemption. The bankruptcy court heard the trustee's objection *en banc.* It allowed debtor's exemption of his interest in the residence.

*Ford* is a long opinion. It addresses three separate issues: 1) whether the debtor's interest in the entireties property became property of the estate; 2) whether the debtor's interest was eligible for exemption pursuant to Section 522(b)(2)(B);

and 3) whether it would be constitutional to enforce Section 541 retroactively if the debtor was not permitted to exempt his interest in the entireties property. The question of whether the commencement of a bankruptcy proceeding severed the entireties estate arose in connection with the court's discussion of whether the debtor's interest became property of the estate.

The court in *Ford* concluded, after a long explanation, that the debtor's interest in the entireties property did in fact transfer into the bankruptcy estate upon the commencement of the bankruptcy proceeding but that his spouse's interest did not. *Id.* at 564–571, 575. Only one paragraph of this nine page discussion is devoted to the trustee's contention that the inclusion of the debtor's interest in the bankruptcy estate also severed the entireties estate:

The trustee contends that the filing of the petition acts as an immediate severance of the estate by the entireties since the debtor's interest passes immediately to the trustee thereby severing the time honored unities of time, title, identity of interest, and possession, necessary to preserve the estate by the entireties. The court disagrees. The legislative history consistently takes the position, ultimately enacted in § 541(a)(1), that it is the debtor's undivided interest in tenants by the entireties property which becomes the property of the estate. It is the debtor's undivided interest as it exists immediately prior to the filing of the petition that passes to the estate. There is no severance of the unities when the debtor's interest passes to the estate. The trustee merely obtains and retains custody of the debtor's undivided interest consisting of the same unities, intact and unaltered, as they existed immediately prior to the filing of the petition, until such time as that interest, still intact and unaltered, is exempted from the estate under § 522(b)(2)(B), provid-

ed such exemption is available and property taken by the debtor. The trustee cites no authority in support of the concept of severance, nor is it mentioned in the legislative history. **In addition, if there were such a severance, the tenancy by the entireties, as recognized in Maryland, would become a tenancy of a different kind. Such a result would nullify the exemption for the debtor's interest in tenants by the entireties property provided under § 522(b)(2)(B) since a tenancy by the entirety would no longer exist. Precisely as § 522(b)(2)(B) should not be rendered impotent by holding that the debtor's undivided interest is not property of the estate, it should not be rendered meaningless by holding that there is no longer any estate by the entireties upon which it can operate.** Just as it would confound common sense to provide for an exemption for the debtor's interest in tenants by the entireties property if such interest were not in the estate, it would similarly distort all logic to provide for such an exemption if the interest in the tenancy as it existed immediately prior to filing of the petition no longer exists due to the filing of the petition. Moreover, the trustee's construction completely ignores the express terms of § 522(b)(2)(B), which refer to the debtor's undivided interest in entireties property which the debtor held "immediately before the commencement of the case." Under the express terms of this provision the moment of significance is the instant immediately before the commencement of the case; it is the debtor's interest in entireties property at that time which becomes the property of the estate and which may be the subject of the exemption provided in § 522(b)(2)(B).

*Id.* at 570–71 (emphasis added).

With all respect due to the court in *Ford,* its analysis is flawed. First, the court ignored the problem presented by its conclusion that the debtor's interest became property of the estate. At the outset of its opinion it identified the marital relationship between the two co-tenants as the singular characteristic that distinguished an estate by the entirety from other co-tenancies. *Id.* at 565–66. However, the court offered no explanation as to why this requirement could be ignored upon the commencement of a bankruptcy proceeding and the attendant substitution of the bankruptcy estate for the debtor as the co-tenant of the subject property.

Second, the inconsistency perceived by the court in *Ford* does not exist. The court in *Ford* emphasized that it was the "express terms" of Section 522(b)(2)(B) that controlled its decision to preserve the entireties estate post-petition. However, the express terms of Section 522(b)(2)(B) require no such conclusion. That subparagraph identifies as an available exemption:

> [A]ny interest in property in which the debtor had, **immediately before the commencement of the case,** an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B) (emphasis added).

■ There is no question that the interest a debtor is to receive as his exemption pursuant to this subparagraph is to come from among those interests that became property of the estate upon the commencement of the debtor's bankruptcy proceeding. However, the express language of Section 522(b)(2)(B) does not require that the interest of the bankruptcy estate that the debtor claims as exempt actually be owned by the bankruptcy estate as a ten-

ant by the entirety. The Section 522(b)(2)(B) exemption only requires the debtor to **have owned** the claimed interest as a tenant by the entirety "immediately before the commencement of the case." *Id.* Whether the bankruptcy estate continues to own that interest as a tenant by the entirety is irrelevant for purposes of determining the exemption allowed by Section 522(b)(2)(B).[27]

Debtors also rely upon Section 363(h) as separate evidence of Congress' intent to preserve the entireties estate post-petition. The Sixth Circuit has interpreted this subsection, together with subsections (i) and (j), as giving a trustee the authority to sell a debtor's interest in entireties property if the debtor's interest is not exempted pursuant to Section 522(b)(2)(B). "If not specifically exempted, the debtor's interest in the entireties property may be sold pursuant to 11 U.S.C. § 363(h)-(i)." *Grosslight*, 757 F.2d at 776. Debtors have seized upon *Grosslight* and the specific reference to entireties property in Section 363(h) as validation of their contention that the debtor's interest in the entireties estate must be preserved post-petition notwithstanding Michigan law to the contrary. The syllogism used by Debtors is the same as that used by the court in *Ford:* No word or phrase in the Bankruptcy Code may be meaningless or contradictory; the reference to "entireties property" in Section

363(h) is meaningless if a tenancy by the entirety does not continue post-petition; therefore, the Bankruptcy Code requires that a tenancy by the entirety continue post-petition. However, Debtors' logic with respect to Section 363(h) is flawed for the same reason as the court's logic in *Ford* was flawed: Debtors have misinterpreted the Bankruptcy Code.

■ *Grosslight's* characterization of how a debtor's interest in entireties property is liquidated by the bankruptcy estate under Section 363 is incorrect. Section 363(h) is not the subsection that authorizes the trustee to dispose of the undivided interest the bankruptcy estate acquired from the debtor. A trustee's authority to liquidate the debtor's own undivided interest in property is derived from Section 363(b)(1).

> Notwithstanding subsection (f) of this section, the trustee may sell **both the estate's interest, under subsection (b) or (c) of this section,** and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if-

11 U.S.C. § 363(h) (emphasis added).[28]

Section 363(h) is intended to address the different problem of liquidating the non-

---

**27.** The legislative history also supports this interpretation of Section 522(b)(2)(B). It describes how Section 522(b) permits the debtor to choose between the set of exemptions offered by Sections 522(d) and the set of exemptions offered by other federal law and the state in which the debtor resides. With respect to the latter scheme, it describes what type of interest may be exempted pursuant to subparagraph (B).

> He may also exempt an interest in property in which the debtor **had** an interest as a tenant by the entirety or joint tenant to the extent that interest **would have been** ex-

empt from process under applicable non-bankruptcy law.

H.R.Rep. No. 95–595 at 360 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6316; S.Rep. No. 95–989 at 75 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5861 (emphasis added).

**28.** Section 363(h) also references Section 363(c) as alternative authority for the bankruptcy trustee to liquidate a debtor's interest in a co-tenancy. Section 363(c) establishes the parameters under which the trustee or the debtor-in-possession must operate when estate assets are being disposed of or used in the ordinary course. It would be unusual for

filing spouse's separate undivided interest in the same property. It complements Sections 363(b) by permitting the trustee to enhance the value of a debtor's undivided interest in a co-tenancy through the sale of the other undivided interests in the co-tenancy as well. This authority applies equally to property in which the debtor owned an undivided interest as a tenant in common, a joint tenant and a tenant by the entirety.

What is important to recognize about Section 363(b)(1) is that the authority granted to the bankruptcy trustee under that subsection is entirely independent of any authority granted to the trustee under Section 363(h). Debtors agree that only a debtor's undivided interest in property held by the entireties with the debtor's spouse becomes property of the estate upon the commencement of the debtor's bankruptcy. It follows then that the bankruptcy trustee has the authority under Section 363(b)(1) to dispose of that undivided interest without any consideration whatsoever to the remaining undivided interests held in that same property by the other co-tenants. As a general proposition, a bankruptcy trustee who holds an undivided interest in Blackacre as successor to the debtor would prefer selling the entire fee in Blackacre and splitting the proceeds with the other co-tenant(s) than selling only the bankruptcy estate's undivided interest in Blackacre to a buyer who must then share the property with one or more potentially hostile co-tenants. However, nothing within Section 363 requires the trustee to dispose of all other undivided interests in the property pursuant to Section 363(h) at the same time that the trustee disposes of the estate's own undivided interest in that property. Section

363(b)(1) clearly gives the trustee the option to liquidate the estate's undivided interest separately.

Indeed, the trustee may have no option other than to market the bankruptcy estate's undivided interest separately. The power granted to the trustee under Section 363(h) is broad; however, it is not unlimited. A court can authorize the trustee to dispose of another co-tenant's interest in property only if all four conditions set forth in Section 363(h) are met. However, the inability to meet one or more of these conditions does not mean that the trustee must abandon the estate's undivided interest in the subject property. It means only that the trustee will be left with the less desirable alternative of disposing of only the bankruptcy estate's undivided interest in the subject property pursuant to Section 363(b)(1).

Debtors read into Section 363(h) something that is not there. Section 363(h) is nothing more than a tool to facilitate a bankruptcy trustee's ability to maximize the bankruptcy estate's interest in a common law co-tenancy. If the debtor **held** an interest in one of the co-tenancies described in Section 363(h) prior to the commencement of his bankruptcy proceeding, then Section 363(h), together with Section 363(b)(1), authorizes the bankruptcy trustee to sell all of the interests in the co-tenancy provided that the conditions in Section 363(h) are met. However, Section 363(h) is silent as to how the bankruptcy estate itself holds the undivided interest to be sold in conjunction with that subsection. It makes no difference under Section 363(h) whether the bankruptcy estate's interest in the co-tenancy continues as an entireties or joint tenancy or whether it is transformed at the commencement of the

a trustee to rely upon Section 363(c) to liquidate a bankruptcy estate's undivided interest

in a co-tenancy.

bankruptcy proceeding to a tenancy in common.

■ Therefore, I am unpersuaded by Debtors' reliance upon Section 363(h) as a manifestation of Congress' intent to override Michigan law regarding entireties property. Debtors' syllogism cannot stand if the minor premise is false. Section 363(h) relates to the bankruptcy estate's disposition of the undivided interests of non-debtor co-tenants in property in which the bankruptcy estate also holds an undivided interest. Section 363(h) is operative regardless of how the bankruptcy estate owns the undivided interest acquired from the debtor in the same property. Consequently, the reference to entireties property in that subsection cannot be relied upon as support for Debtors' contention that Congress intended to override Michigan law and to preserve a debtor's interest in entireties property post-petition.

In fact, Section 363 convinces me even more that the commencement of a bankruptcy proceeding severs a tenancy by the entirety between a debtor and his spouse in Michigan and replaces it with a tenancy in common between the bankruptcy estate and the debtor's spouse. First, Section 363(b)(1) fundamentally changes the property rights between the two co-tenants. The requirement that the two co-tenants be married and the inability of one cotenant to convey his or her undivided interest without the consent of the other are two features that distinguish a Michigan tenancy by the entirety from other common law tenancies. However, the commencement of a bankruptcy proceeding eliminates both of these features. The co-tenancy is no longer between husband and wife, but between the bankruptcy estate and debtor's spouse. Moreover, the bankruptcy estate may dispose of the undivided interest it acquired from the debtor without the consent of the debtor's spouse. All that is required is notice and a hearing.

Debtors nonetheless persist in their argument that Congress intended to preserve the entireties estate post-petition. However, what is left to preserve? A tenancy in common, not a tenancy by the entirety, best describes the post-petition relationship that exists between the bankruptcy estate and the non-filing spouse under Michigan law. A tenancy in common does not require unity of marriage nor does it prohibit unilateral conveyances by one co-tenant. While it was certainly within Congress' power to preserve the entireties estate notwithstanding the fundamental changes caused by Section 541, Debtors have offered nothing to support their speculation that this in fact was Congress' intent. Instead, the express language of the Bankruptcy Code itself, when applied in conjunction with applicable Michigan law, supports my conclusions that a severance of the entireties estate occurs whenever a bankruptcy proceeding is commenced and that the resulting co-tenancy between the bankruptcy estate and the debtor's spouse will be a tenancy in common.

Second, Congress' grant of authority to the trustee under Section 363(b)(1) to sell the bankruptcy estate's interest in property that had been held by debtor and his spouse pre-petition as tenants by the entirety raises an ancillary question: Does the non-filing spouse have a corresponding right to dispose of her undivided interest in the co-tenancy after the commencement of the debtor's bankruptcy proceeding? If Debtors are correct in their assertion that the entireties estate is to continue post-petition, then the answer is no. However, an inequity would result, for the non-filing spouse would continue to be constrained under Michigan law from conveying her interest in the entireties property whereas

the bankruptcy trustee would be able to dispose of the debtor's interest pursuant to Section 363(b). It is conceivable that Congress intended there to be such an inequity although one would have certainly expected Congress to have offered some explanation for its decision. Of course, there is no inequity if, as I have concluded, the commencement of the debtor's bankruptcy results in the immediate severance of the entireties property and the attendant creation of a tenancy in common between the bankruptcy estate and the debtor's spouse. As tenants in common, the bankruptcy estate and the debtor's spouse would both have the unfettered right to unilaterally dispose of their separate undivided interests.

Third, there is no question that the trustee may use the bankruptcy process to convey the bankruptcy estate's undivided interest in the property without the consent of the non-filing spouse. For example, assume that the trustee of Mr. A's bankruptcy estate is unable to compel the sale of Mrs. A's interest in Whiteacre but that Mr. and Mrs. B are still willing to buy the bankruptcy estate's undivided interest.[29] Under no circumstances would Michigan law allow Mrs. A and Mr. and Mrs. B to own Whiteacre thereafter as tenants by the entirety. Rather, Michigan would recognize the resulting co-tenancy as a tenancy in common with Mrs. A owning a half interest and Mrs. and Mrs. B owning a quarter interest each.

Consequently, it is clear that the entireties estate may be severed at some point during the bankruptcy proceeding. The only question is when. Debtors in fact concede this point but insist that a severance should occur only when the trustee actually disposes of the debtor's interest in the property to a third person.[30] However, Debtors offer nothing to support this contention. They simply argue that the Bankruptcy Code ought to preserve the entireties estate unless and until the trustee disposes of the debtor's interest pursuant to Section 363(b). But why? If state law prohibiting persons other than a husband and wife from owning property by the entirety is to prevail when the trustee unilaterally sells the bankruptcy estate's undivided interest to a third party, then why should not the same prohibition prevail when the debtor unilaterally transfers his undivided interest in the entireties property to the bankruptcy estate at the commencement of his bankruptcy proceeding?

It is reasonable to expect that Congress would have given at least some hint that it intended to allow the bankruptcy estate to hold property as a tenant by the entirety with the non-filing spouse notwithstanding state law to the contrary if in fact that is what Congress intended. Indeed, *Butner*

---

**29.** This assumption is not as far-fetched as it may sound. A former spouse of the debtor or an "unneighborly" neighbor might be more than happy to purchase an apparently "valueless" interest in the property in order to use it as leverage in his or her own dealings with the debtor and the non-filing spouse.

**30.** *Ford* also apparently recognized that an undivided interest in entireties property might ultimately be severed at some point in the process, for it seems to agree that a severance would occur if the Section 522(b)(2)(B) exemption was either not claimed or claimed but not allowed.

There is no severance of the unities when the debtor's interest passes to the estate. The trustee merely obtains and retains custody of the debtor's undivided interest consisting of the same unities, intact and unaltered, as they existed immediately prior to the filing of the petition, until such time as that interest, still intact and unaltered, is exempted from the estate under § 522(b)(2)(B), provided such exemption is available and property [sic] taken by the debtor.

*Ford,* 3 B.R. at 570.

requires affirmative action by Congress to alter what would otherwise be a party's property rights under state law. Consequently, Congress' silence concerning this issue cannot be interpreted as an opportunity for federal courts to develop their own common law as to how this issue is to be resolved.[31]

To summarize, I conclude that the commencement of a bankruptcy proceeding severs whatever tenancies by the entirety a debtor may own with his non-filing spouse under Michigan law at the time the bankruptcy petition is filed.[32] My conclusion is compelled by the convergence of federal bankruptcy law, which mandates

**31.** Debtors have cited one passage from the legislative history as providing evidence that Congress intended to preserve the entireties estate subsequent to the commencement of a bankruptcy proceeding.

> The bill also changes the rules with respect to marital interests in property.... With respect to other co-ownership interest, such as tenancies by the entirety, joint tenancies, and tenancies in common, the bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtor's interest in the property while protecting the other rights. The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or a waiver of rights by the spouse of the debtor or the co-owner, as may be required for a complete sale under applicable State law. The other interest is protected under H.R. 8200 by giving the spouse a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property....

H.R.Rep. No. 95–595 at 177 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6137–38.

This passage is taken from the report of the House Judiciary Committee. There is no similar language in either the Report of the Senate Judiciary Committee S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 or in the joint explanatory statement for the compromise bill that was ultimately enacted 124 Cong. Rec. H11047–117 (daily ed., September 28, 1978).

This passage is at best ambiguous. The House Judiciary Committee's preliminary comment that the bill then before it was not designed to invalidate co-ownership rights such as those held as tenants by the entirety does suggest some intention by at least that committee that property that had been held pre-petition as a tenant by the entirety was to continue to be held in the same manner post-petition by the bankruptcy estate. However, this preliminary comment was then qualified by subsequent language concerning the liquidation of all undivided interests in the property for the mutual benefit of all. When read in the context of these additional remarks, it appears that the point of this particular passage in the committee's report was not to preserve the entireties estate. Rather, the point was to highlight the inclusion of Section 363(h) in the bill and to emphasize the procedural safeguards incorporated into that section to protect the rights of a non-filing co-owner of a tenancy by the entirety, a tenancy in common, and a joint tenancy alike. In any event, I determine that this comment alone is insufficient to support Debtors' argument that Congress intended a tenancy by the entirety under Michigan law to continue post-petition even though the requisite marital relationship would no longer exist.

**32.** Section 541(a) does not distinguish between the various types of cases that are allowed under the Bankruptcy Code. A debtor's interest in entireties property will transfer into the bankruptcy estate regardless of whether the proceeding is under Chapter 7, 11, 12, or 13. Therefore, a severance of the entireties property will occur whenever a bankruptcy petition is filed.

However, a debtor in a Chapter 11, 12, or 13 proceeding, unlike a debtor in a Chapter 7 proceeding, can control the outcome of that proceeding through the plan confirmation process. A Chapter 11, 12, or 13 plan may include any provision that is not inconsistent with the applicable provisions of the Bankruptcy Code. 11 U.S.C. §§ 1122(b)(6), 1222(b)(11), and 1322(b)(10). I see no reason why a debtor could not, as part of his plan, direct that whatever interests the debtor owned pre-petition as a tenant by the entirety will revest with the debtor upon confirmation and be held once again as a tenant by the entirety with his spouse. Of course, the non-filing spouse would also have to consent to the two undivided interests being owned again as tenants by the entirety.

that whatever interest the debtor may have in entireties property be immediately and automatically transferred into a bankruptcy estate, and Michigan law, which prohibits without qualification estates and other legal artifices from holding such tenancies. It was certainly within Congress' power to avoid this otherwise compulsory severance by including in the Bankruptcy Code some provision that would preserve the tenancy until, for example, the debtor had made his final decision concerning the exemption of that interest. However, Congress, for whatever reason, chose not to create such an exception. Consequently, Michigan law controls. *Butner,* 99 S.Ct. at 917–18.[33]

33. I recognize that my conclusion creates results that may have been unforeseen by Congress. The judiciary's failure for over twenty years to recognize the logical consequence of including tenancies by the entireties in the Section 541(a) bankruptcy estate certainly suggests that Congress also may have failed to fully consider the consequences of that decision. Frankly, I am not convinced that this is the case. However, even if it were clear that Congress had not intended this result, it is not my place to correct the perceived error.

Debtors have also argued that the result is unfair, especially in situations where the bankruptcy proceeding was commenced through an involuntary petition. A bankruptcy estate is created regardless of whether the petition filed is voluntary or involuntary. 11 U.S.C. §§ 303(b) and 541(a). On the other hand, the administration of the bankruptcy estate created by the involuntary petition is not inevitable. A debtor may contest the involuntary petition and, if successful, may have the involuntary petition dismissed. 11 U.S.C. §§ 303(h) and (i); Fed.R.Bankr.P. 1018. Therefore, the real possibility exists that a debtor and his non-filing spouse could end up no longer holding property as tenants by the entirety through an unsuccessful attempt by the debtor's creditors to place him in an involuntary bankruptcy proceeding.

I agree that such a result, on its face, appears to be both unfair and unintended. However, I emphasize the word "appears." I can only speculate as to whether Congress considered the consequence of an unsuccessful involuntary bankruptcy proceeding upon entireties property. However, I am certain that Congress did intend that a debtor's interest in entireties property would transfer immediately and without qualification to the bankruptcy estate whenever a bankruptcy proceeding, whether voluntary or involuntary, was commenced. I am equally satisfied that Congress did not intend to preserve a tenancy by the entirety that existed under Michigan law pre-petition once the bankruptcy estate became the owner of the debtor's interest. It is not for me to skew or otherwise create exceptions to the clear dictates of Congress simply because a potential consequence of the legislative enactment appears to be unfair or unintended. *Lamie v. U.S. Trustee,* —— U.S. ——, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004).

Moreover, it is not inevitable that a husband's and wife's tenancy by the entirety will be irreparably severed as a result of an unsuccessful involuntary bankruptcy petition. First, Section 349(b)(3) provides that the undivided interest in entireties property that the bankruptcy estate acquired upon the commencement of a bankruptcy proceeding "revests" to the debtor if the proceeding is later dismissed. It is distinctly possible that the Michigan courts would interpret Michigan law to permit the resurrection of the entireties estate under circumstances where a bankruptcy proceeding is later dismissed and the interest in the former entireties property is "revested" with the debtor.

Second, Section 105(a) may also be available to remedy this apparent inequity. This section authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). While Section 105(a) may not be used to alter outcomes that Congress intended simply because the court believes that an injustice will be done in a particular case, there is certainly sufficient justification within Sections 303(h) and 549(e) to warrant the inclusion within an order dismissing an involuntary bankruptcy proceeding Section 105(a) language that would override whatever impediments might exist under state law to the re-creation of the entireties estate upon the dismissal of the involuntary bankruptcy petition.

Finally, the unscrupulous creditor will not go unpunished even if state law and/or Section 105(a) cannot resurrect a tenancy by the

I also conclude that Michigan law would treat the tenancy between the bankruptcy estate and the debtor's spouse resulting from the commencement of the debtor's bankruptcy proceeding as a tenancy in common. As already discussed, the Michigan legislature has declared that the involuntary termination of a tenancy by the entirety resulting from a contested divorce will transform the co-tenancy into a tenancy in common. Therefore, it is reasonable to assume that the Michigan courts would similarly conclude that the involuntary termination of a tenancy by the entirety through the commencement of a bankruptcy proceeding would result in the bankruptcy estate and the non-debtor spouse owning the undivided interests in the property as tenants in common.[34]

■ Finally, I am satisfied that the undivided interests held by the debtor's bankruptcy estate and the debtor's non-filing spouse post-petition as tenants in common are equal in size. In other words, the bankruptcy estate and the debtor's spouse will each hold an undivided half interest in the subject property after the bankruptcy proceeding is commenced. I

recognize that an argument can be made that the interest should be divided based upon life expectancies of the debtor and the non-filing spouse. Otherwise, a non-filing spouse who is substantially younger than the debtor would lose not only the benefit of holding property by the entireties because of the other spouse's bankruptcy proceeding but also would be left uncompensated for the actuarial advantage that the non-filing spouse had enjoyed before the bankruptcy proceeding involuntarily severed the entireties estate. Of course, the sword does cut both ways. If the non-filing spouse is older than the debtor, then she would stand to gain financially from the equal division of the entireties property severed by the younger spouse's bankruptcy proceeding.

I have not found any Michigan law that requires an apportionment of the resulting undivided interests based upon actuarial considerations. To the contrary, whenever a tenancy by the entireties is involuntarily severed by a divorce, Michigan law divides the severed estate equally between the two former spouses. *See, In re Ignasiak*, 22 B.R. 828, 830 (Bankr.E.D.Mich.1982); *La-*

---

entirety destroyed by an involuntary petition filed for the sole purpose of destroying the entireties estate. Section 303(i)(2) permits the bankruptcy court to grant a judgment against the petitioning creditor for both actual and punitive damages if the petition has been brought in bad faith. One must assume that the risk of substantial damages being assessed because of the unwarranted severance of the debtor's entireties property would serve as at least some deterrent to a creditor who is considering taking improper advantage of Section 541(a) through the filing of an involuntary bankruptcy petition.

34. Each of the cases before me involve only one of the spouses being in a bankruptcy proceeding. Consequently, I have described the bankruptcy estate as owning one of the undivided interests in the property post-petition and the non-filing spouse as owning the other undivided interest in the property.

However, the outcome would not change if, for example, both spouses filed bankruptcy petitions. Severance of the entireties property would still occur because the unity of marriage would no longer exist. The only difference would be that the co-owners of the post-petition tenancy in common would be two bankruptcy estates instead of one bankruptcy estate and the debtor's non-filing spouse.

That a husband and wife may file a joint petition does not change the outcome either. Section 302(a) does permit a husband and wife to commence bankruptcy proceedings involving both of them through a single petition. However, the joint petition creates two separate bankruptcy estates, one for each spouse, instead of a single bankruptcy estate for both spouses. It is left to the court to decide at some point after the petition is filed whether the two estates should be jointly administered or substantively consolidated. 11 U.S.C. § 303(b); Fed.R.Bankr.P. 1015(b).

*sich v. Wickstrom (In re Wickstrom),* 113 B.R. 339, 349 (Bankr.W.D.Mich.1990). I have also found nothing in the Bankruptcy Code that requires the division of entireties property to be based upon actuarial considerations. For example, Section 363(j) is silent as to how the bankruptcy estate's and the non-filing spouse's interests in entireties property are to be accounted for if the trustee sells both the spouse's and the bankruptcy estate's interests in the property pursuant to Section 363(b) and (h). Therefore, I conclude that the undivided interest that each bankruptcy estate acquired from each debtor in the four matters before me is a half interest, with the non-filing spouse of each debtor holding the other half interest in that property.

The next issue raised by Trustee's objection is the amount of the exemption available to each debtor pursuant to Section 522(b)(2). Trustee contends that the Section 522(b)(2)(B) exemption cannot be claimed by any of the debtors because the bankruptcy estate owns the undivided interest acquired from the debtor as a tenant in common rather than as a tenant by the entirety. This is the same argument the court in *Ford* relied upon to conclude that the commencement of a bankruptcy proceeding did not sever the entireties estate. *Ford,* 3 B.R. at 570–71. However, as already discussed, the Section 522(b)(2)(B) exemption only requires the

debtor to **have owned** the claimed interest as a tenant by the entirety **immediately before the commencement of the case.** That the bankruptcy estate's succeeding interest in the property is held as a tenant in common, and not as a tenant by the entirety, is irrelevant for purposes of determining whether the Section 522(b)(2)(B) exemption is available or not.

Ms. Spears and Messrs. Sedgewick and Brehm each held the interest now claimed by them as exempt pursuant to Section 522(b)(2)(B) as a tenant by the entirety immediately before the commencement of their bankruptcy proceedings.[35] Therefore, these three debtors are clearly eligible to take advantage of the Section 522(b)(2)(B) exemption. The maximum amount of the available exemption is the value of the bankruptcy estate's half interest as a tenant in common in the subject property.[36]

However, the amount of the exemption that these debtors may claim pursuant to Section 522(b)(2)(B) is limited. That section permits the exemption of:

> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant **to the extent that such interest as a tenant by the entirety or joint**

---

**35.** Mr. Gillis also owned the interest claimed by him as exempt as a tenant by the entirety immediately before the commencement of his bankruptcy proceeding. However, Mr. Gillis changed his exemptions from those permitted by Section 522(b)(2) to those permitted by Section 522(b)(1). He now relies upon Section 522(d)(1) to exempt the undivided interest owned by the bankruptcy estate in the Hersey property. Section 522(d)(1) makes no distinction as to how Mr. Gillis owned the property pre-petition. Rather, Section 522(d)(1) focuses on whether the debtor or his

dependent is currently using the property in question as his or her residence.

**36.** What exactly is the "value" of the bankruptcy estate's half interest in the subject property may be elusive. It will depend upon whether the trustee is permitted to sell the bankruptcy estate's interest and the non-debtor spouse's interest together pursuant to Section 363(b) and (h) or whether the trustee will be restricted to disposing of only the bankruptcy estate's interest in the property pursuant to Section 363(b).

**tenant is exempt from process under applicable nonbankruptcy law.**

11 U.S.C. § 522(b)(2)(B) (emphasis added).

■ Under Michigan law, a creditor of one spouse but not the other spouse may not execute against property owned by the couple as tenants by the entireties. However, if the husband and wife are jointly liable to the creditor, then the entireties property is subject to execution by the joint creditor. *Rossman v. Hutchinson*, 289 Mich. 577, 588, 286 N.W. 835 (1939); *Kolakowski v. Cyman*, 285 Mich. 585, 588–89, 281 N.W. 332 (1938). *See also, Grosslight*, 757 F.2d at 776; *Trickett*, 14 B.R. at 87, 89.

Therefore, a Michigan debtor's allowed exemption pursuant to Section 522(b)(2)(B) is inversely related to the amount of the valid claims that creditors have against both the debtor and his non-filing spouse. If the debtor has no joint claims against him, then the debtor would be allowed to exempt the entire interest held by the bankruptcy estate in whatever property debtor had owned as a tenant by the entirety pre-petition. If, however, a creditor's claim against the debtor is jointly owned by the debtor and his spouse, then the debtor's Section 522(b)(2)(B) exemption would be reduced by the amount of that claim. Indeed, if the amount of valid joint claims against the debtor exceeds the value of the bankruptcy estate's undivided interest in the former entireties property, then the debtor would be allowed no exemption under Section 522(b)(2)(B). However, a Michigan debtor might still be able to exempt up to $3,500 of the bankruptcy estate's interest in the former entireties property if the interest qualifies as a "homestead." 11 U.S.C. § 522(b)(1) and M.C.L. § 6023(1)(h).

■ Trustee also contends that whatever is left of the bankruptcy estate's interest in the former entireties property after the Section 522(b)(2)(B) exemption is allowed should be administered for the benefit of all of the debtor's creditors. For example, assume that a Chapter 7 debtor and his wife owned property as tenants by the entirety pre-petition worth $100,000 and that creditors had $30,000 in joint claims against his wife and him. The bankruptcy estate's interest in the property would be $50,000 (one-half of $100,000) and the debtor's Section 522(b)(2)(B) exemption would be $20,000 ($50,000 minus the $30,000 in joint claims). It is the Trustee's position that the remaining value of the bankruptcy estate's interest in the former entireties property (*i.e.*, $50,000 less liquidation costs and less the debtor's $20,000 exemption) should be distributed to the debtor's creditors pursuant to Section 726(a), as opposed to just the debtor's joint creditors.

However, Trustee's position is at odds with the procedure currently used in this district to administer property claimed as exempt pursuant to Section 522(b)(2)(B). This procedure, which is known as the *Trickett* procedure, is based upon this court's comments in a Chapter 7 proceeding by the same name. *In re Trickett*, 14 B.R. 85 (Bankr.W.D.Mich.1981).[37]

*Trickett* was decided shortly after the enactment of the Bankruptcy Code. Wilson

---

**37.** This court did not actually adopt the *Trickett* procedure when it issued its written opinion. Rather, it only suggested a procedure to replace what had been the procedure under the Bankruptcy Act. However, over time, the procedure suggested in *Trickett* has in fact become the procedure used in this district to administer entireties property subject to joint claims under the Bankruptcy Code.

The Sixth Circuit did mention the *Trickett* procedure in *Grosslight* (757 F.2d at 777). However, *Grosslight* did decide whether the procedure was proper or not.

Trickett, who was married, had filed a petition for relief under Chapter 7. Mrs. Trickett did not join in the petition. Mr. Trickett's schedules indicated that he owned a number of parcels of property as a tenant by the entirety with his wife. Mr. Trickett set the value of his wife's and his interests in these properties at more than $2 million. Michigan National Bank was a joint creditor of Mr. and Mrs. Trickett. Its claim was approximately $40,000. Another joint creditor had a claim against the Tricketts in the amount of $65,000.

Under the former Bankruptcy Act, creditors holding unsecured claims against the debtor and his spouse were barred from enforcing their claims against entireties property once the debtor's discharge was entered. *Fetter v. United States,* 269 F.2d 467 (6th Cir.1959); *Harris v. Manufacturers National Bank of Detroit,* 457 F.2d 631 (6th Cir.1972), *cert. denied* 409 U.S. 885, 93 S.Ct. 118, 34 L.Ed.2d 142 (1972). Consequently, a procedure had evolved in this district under the Bankruptcy Act whereby joint creditors were given the opportunity to enforce their joint claims against entireties property before the debtor's discharge was entered. *In re Black,* 14 C.B.C. 481 (W.D.Mich.1977). The order to stay the debtor's discharge pursuant to such a request was referred to as a "Black order."

Michigan National Bank commenced an adversary proceeding against Mr. Trickett. Michigan National Bank's complaint requested both relief from the automatic stay to proceed with its joint claim against Mr. and Mrs. Trickett in state court and the entry of a Black order pending the outcome of the state court action. The court in *Trickett* denied both requests on the basis that such relief was no longer necessary under the Bankruptcy Code. The court described the Black order process as both cumbersome and unfair.

The *Trickett* court also suggested an alternative procedure. The suggested procedure recognizes a separate class of creditors consisting of only those creditors with claims against both the debtor and the debtor's spouse. These creditors are given the opportunity to file "joint" proofs of claim against the bankruptcy estate. Whatever joint claims are filed are then separately administered by the trustee in a manner similar to other proofs of claim. That is, they are subjected to the objection process. If joint claims remain after that process, then the trustee is to dispose of the property that the debtor and his spouse had held by the entirety pursuant to Section 363(h), (i) and (j). The trustee is to then distribute the bankruptcy estate's portion of the proceeds to those joint creditors whose joint claims have been allowed. If the bankruptcy estate's portion of the proceeds is greater than the amount of the allowed joint claims, then the surplus is to be distributed to the debtor.

The procedure suggested by the court in *Trickett* was its own creation. There is no section in the Bankruptcy Code that describes the process that the court proposed. In contrast, the Bankruptcy Code expressly provides for the administration of community claims against community property. It requires that all interests of the debtor and the debtor's spouse in community property be included in the bankruptcy estate. *See,* Section 541(a)(2). It then provides that the community property is to be segregated from the other property of the estate and administered with respect to "community claims" against that property.[38]

---

**38.** (c) Notwithstanding subsections (a) and (b) of this section, if there is property of the

kind specified in section 541(a)(2) of this title, or proceeds of such property, in the estate,

The existence within the Bankruptcy Code of a detailed procedure to administer community property and community claims, coupled with the corresponding absence in the Bankruptcy Code of any similar procedure for the administration of entireties property and joint claims, undermines the *Trickett* court's assumption that it had the authority to establish the procedure that it did. At a minimum, Section 726 requires consideration of the possibility that Congress did not intend there to be any special procedure for the administration of a debtor's interest in entireties property once that interest became property of the estate.

The unstated premise in *Trickett* is that the enactment of the Bankruptcy Code did not radically change the treatment of entireties property in a bankruptcy proceeding. *Trickett* certainly recognized that the Bankruptcy Code changed the law by requiring a debtor's interest in entireties property to become property of the estate.

It also recognized that the Bankruptcy Code permitted the trustee to dispose of both the bankruptcy estate's and the non-filing spouse's interests in the entireties property if the conditions of Section 363(h) could be met. However, in spite of these changes, *Trickett* assumed that the law concerning the treatment of entireties property in a bankruptcy proceeding remained essentially the same. *Trickett* assumed that property owned by the debtor and the non-filing spouse pre-petition as tenants by the entirety would continue to be held by them as tenants by the entirety at the conclusion of the bankruptcy proceeding if the debtor elected the Section 522(b)(2) exemption and if the trustee did not intervene. It is this assumption that prompted the court in *Trickett* to suggest the procedure that it did. From its point of view, *Fetter* and *Harris* remained a problem because a debtor and his wife could still use the Bankruptcy Code to protect their entireties property from joint

such property or proceeds shall be segregated from other property of the estate, and such property or proceeds and other property of the estate shall be distributed as follows:

(1) Claims allowed under section 503 of this title shall be paid either from property of the kind specified in section 541(a)(2) of this title, or from other property of the estate, as the interest of justice requires.

(2) Allowed claims, other than claims allowed under section 503 of this title, shall be paid in the order specified in subsection (a) of this section, and, with respect to claims of a kind specified in a particular paragraph of section 507 of this title or subsection (a) of this section, in the following order and manner:

(A) First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541(a)(2) of this title, except to the extent that such property is solely liable for debts of the debtor.

(B) Second, to the extent that community claims against the debtor are not paid under subparagraph (a) of this paragraph,

such community claims shall be paid from property of the kind specified in section 541(a)(2) of this title that is solely liable for debts of the debtor.

(C) Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541(a)(2) of this title.

(D) Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph, such claims shall be paid from all remaining property of the estate.

11 U.S.C. § 726(c).

A "community claim" is:

[a] claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case.

11 U.S.C. § 101(7).

creditors. The court in *Trickett* approached the changes made by the Bankruptcy Code with respect to entireties property as simply providing it with an opportunity to create a better solution to this persistent problem.

However, I cannot find anything in either the Bankruptcy Code or the legislative history to support *Trickett's* assumption that the entireties estate is to reemerge unscathed from the bankruptcy process unless the bankruptcy trustee chooses to administer it pursuant to Section 363(h). The Bankruptcy Code and the legislative history in fact indicate a very different outcome for entireties property owned by the debtor and his spouse pre-petition.

Providing an individual debtor with a "fresh start" is a fundamental objective of the Bankruptcy Code. Congress determined in the late 1970s that the former Bankruptcy Act, which had not had any major revision since 1938, did not adequately protect consumer debtors. *See, e.g.,* H.R.Rep. No. 95–595 at 116–118 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6076–79. It concluded that "bankruptcy relief should be effective, and should provide the debtor with a fresh start." 1978 U.S.C.C.A.N. at 6079.

Congress enacted the exemption scheme set forth in Section 522 in order to provide an individual debtor with the fresh start it contemplated.

> Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start.

> \*     \*     \*     \*     \*     \*

The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge.

H.R.Rep. No. 95–595 at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6087.

The Bankruptcy Code also changed the process by which the debtor secured the exempt assets needed by him to facilitate his fresh start. Under the Bankruptcy Act, the debtor simply retained whatever he was allowed to exempt under state law. No exempt property ever became property of the estate. Bankruptcy Act of 1898, § 70a (repealed 1979). In contrast, the Bankruptcy Code required that all of the debtor's property, including property claimed as exempt, transfer from the debtor to the bankruptcy estate upon the commencement of the debtor's bankruptcy proceeding. Congress' intent was that the debtor would then pick from the bankruptcy estate those items permitted under Section 522 that debtor believed would best contribute to his fresh start for the future. *See* H.R.Rep. No. 95–595 at 368 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6324; S.Rep. No. 95–989 at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868.

This process is codified in Section 522(b) and (c):

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.

> \*     \*     \*     \*     \*     \*

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is

determined under section 502 of this title as if such debt had arisen, before the commencement of the case[.]

\* \* \* \* \* \*

11 U.S.C. § 522(b) and (c).

The notion that the debtor's interest in entireties property claimed as exempt by the debtor continues as entireties property when the debtor's interest is released from the bankruptcy estate is inconsistent with the process I have just described. If, in fact, the debtor's undivided interest in property held by him and his non-filing spouse pre-petition as tenants by the entirety is to again be held as tenants by the entirety once his exemption is allowed, then it follows that debtor would also be again subject to that singular feature of entireties property that distinguishes it from all other cotenancies in Michigan, that being the inability to convey his interest without the consent of his spouse. However, nothing in the Bankruptcy Code or the legislative history suggests that the debtor's use of the property he has exempted pursuant to Section 522(b)(2)(B) is to be so constrained. The purpose of the debtor's Section 522(b)(2)(B) exemption, like all other exemptions allowed under Section 522, is to facilitate the debtor's fresh start. While it is certainly possible that the debtor may wish to combine his exempted interest in the property with the interest of his spouse to re-form the entireties estate that they had previously enjoyed, the Bankruptcy Code clearly does not require this result. To the contrary, the Bankruptcy Code gives the debtor free rein to decide how best to use the exemptions allowed him to achieve **HIS** financial rehabilitation. It is for the debtor alone to decide whether the undivided interest he has re-acquired from the bankruptcy estate as an exempt asset be shared again as a tenant by the entirety with his spouse or converted to other property more suited for his fresh start.[39]

*Trickett's* assumption that a debtor's interest in entireties property will re-emerge from the bankruptcy proceeding unaltered if claimed as exempt pursuant to Section 522(b)(2) is further undermined by my conclusion that a tenancy by the entirety is severed upon the commencement of the bankruptcy proceeding. As already discussed, all interests of the debtor, including interests in entireties property that the debtor intends to exempt pursuant to Section 522(b)(2)(B), become property of the estate when the case is commenced. Consequently, even property that is ultimately returned to the debtor as an allowed ex-

---

**39.** The importance of allowing the debtor the unrestricted right to use his exemption as he sees fit is more apparent when the exemption involves cash as opposed to property in-kind. For example, assume that the debtor claims a Section 522(b)(2)(B) exemption in an undivided interest in property that the debtor had owned pre-petition as entireties property with his spouse. Assume further that there are also joint claims against the debtor and his wife. Finally, assume that the debtor was not able to reach a settlement with the trustee concerning those claims and therefore the trustee had to sell the bankruptcy estate's interest in the property in order to recover for the benefit of the estate the amount represented by those joint claims. Under these circumstances, the debtor would receive cash as his Section 522(b)(2)(B) exemption. Those courts that have assumed that the entireties estate is resurrected if the debtor successfully claims a Section 522(b)(2)(B) exemption would presumably hold that the money the debtor receives from the bankruptcy estate on account of his Section 522(b)(2)(B) would retain its character as entireties property and be held jointly with whatever the debtor's spouse received in connection with the accounting under Section 363(h). However, such a restriction on the debtor's ability to use that cash would clearly run afoul of Congress' stated intention to provide the debtor the means to pursue a fresh start.

emption must be part of the bankruptcy estate for at least the time period allowed for the trustee and other interested parties to object to the exemption claimed. 11 U.S.C. § 522(*l*).

Courts that have concluded that entireties property will re-emerge unscathed from the bankruptcy proceeding if claimed as exempt simply assume that the bankruptcy estate's interest in the property previously owned as entireties property by the debtor and his non-filing spouse will retain its status as entireties property during this interval. I, on the other hand, have concluded that the bankruptcy estate cannot continue to hold the undivided interest acquired from the debtor as entireties property under Michigan law because a bankruptcy estate is an incorporeal entity which is not married to the debtor's spouse. The bankruptcy estate and the non-filing spouse must instead hold their respective undivided interests in the property during this interval as tenants in common. However, a tenant in common, unlike a tenant by the entirety, can convey her undivided interest in the tenancy without the consent of the other co-tenant. Therefore, the debtor's non-filing spouse, as a tenant in common, would be free to convey her undivided interest in the former entireties property at any time during the interval between the commencement of the debtor's bankruptcy proceeding and the allowance of his Section 522(b)(2)(B) exemption.

An outright conveyance by the debtor's spouse of her undivided interest in the property during this interval would of course be rare. However, it is not uncommon for credit cards and other lines of credit to be secured by a home mortgage. What if the non-filing spouse continues to incur debt on a home equity loan during this interval? The bankruptcy estate's interest in the home would not be affected because the bankruptcy estate cannot be liable for the post-petition debt. The debtor would likewise not be liable for the post-petition debt because of the discharge he is to receive as part of the bankruptcy proceeding. However, the non-filing spouse should certainly be liable for this debt. Moreover, it stands to reason that the creditor's lien against the non-filing spouse's undivided tenancy in common would increase by the amount of the debt she incurred during this interval. If, as *Trickett* and other courts have assumed, the entireties estate is to be resurrected once the Section 522(b)(2)(B) exemption is allowed, does this creditor lose its right to enforce its lien once the Section 522(b)(2)(B) exemption is allowed?

Assume now that the debtor's spouse has her own set of creditors when her husband filed his bankruptcy proceeding. Although these creditors would clearly not have been able to execute against the non-filing spouse's interest in entireties property before her husband's bankruptcy, the severance of the entireties property caused by her husband's bankruptcy proceeding would allow the non-filing spouse's creditors to proceed against her interest post-petition at least during the interval immediately after the commencement of that proceeding. Indeed, a creditor's effort to proceed in this manner would not be impeded by the automatic stay imposed by the debtor's bankruptcy proceeding because the spouse's undivided interest in the pre-petition entireties property did not become property of the estate. If, as *Trickett* and other courts have assumed, the entireties estate is to be resurrected once the Section 522(b)(2)(B) exemption is allowed, should the court issue a new order that enjoins these creditors from executing against the spouse's interest in the property until the Section 522(b)(2)(B) exemption is allowed?

Finally, assume that the non-filing spouse incurs new debt during the interval immediately following the commencement of her husband's bankruptcy proceeding. If, as *Trickett* and other courts have assumed, the entireties estate is to be resurrected once the debtor's Section 522(b)(2)(B) exemption is allowed, are these creditors to be ultimately foreclosed from executing against the non-filing spouse's undivided interest in the property once it is recombined with her husband's interest even though it was subject to execution when the post-petition credit was extended to her? Should these post-petition creditors be allowed to later proceed against the non-filing spouse's undivided interest based upon a fraudulent conveyance theory? Or should the court issue a new variation of the "Black order" to stay the allowance of the debtor's Section 522(b)(2)(B) exemption to give these creditors the opportunity to enforce their rights against the spouse's undivided interest? [40]

Judges and lawyers are by nature nostalgic. American jurists are trained to defer to the past, not to reject it. The common law, which is at the heart of the Anglo–American tradition of jurisprudence, represents the accumulation of many centuries of legal precedent. The Supreme Court itself has instructed the bankruptcy courts to assume that Congress intended to incorporate into the Bankruptcy Code customs and practices developed under the Bankruptcy Act unless the Bankruptcy Code directs otherwise. *Cohen v. de la Cruz*, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("We ... will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure" (internal quotation marks and citation omitted)). Therefore, the efforts of courts to preserve the integrity of entireties property in the face of the then newly enacted Bankruptcy Code is understandable.

However, as understandable as these efforts may have been, they were not warranted. Michigan debtors were able to continue owning entireties property under

**40.** *Trickett* itself is inconsistent concerning the status of the interest that is to be returned to the debtor if his Section 522(b)(2)(B) exemption is allowed. On the one hand, *Trickett* assumes that if the debtor claims a Section 522(b)(2)(B) exemption and has no joint creditors, then the undivided interest held by the bankruptcy estate will not only be returned to the debtor but will also be recombined with the undivided interest of the non-filing spouse to re-create the entireties estate. *Trickett* further assumes that if the trustee releases the debtor's undivided interest because none of the debtor's joint creditors filed a timely joint claim, then the re-created entireties estate would be immune from a later attempt by one of these joint creditors to enforce its claim against either the debtor's or the non-filing spouse's interest in that property. In other words, *Fetter* and *Harris* would still apply.

However, *Trickett* also appears to recognize that the entireties estate will no longer exist if the bankruptcy trustee administers the property for the benefit of one or more joint creditors of the debtor. Under this scenario, *Trickett* instructs the bankruptcy trustee to (1) distribute to the non-filing spouse her share of the net proceeds, (2) distribute the debtor's share of the net proceeds to the joint creditors with allowed claims, and (3) distribute whatever remains to the debtor. 14 B.R. at 91. There is no instruction that the debtor share this amount with his non-filing spouse. It therefore follows that there is no corresponding requirement for the non-filing spouse to share the net proceeds she received from the trustee with the debtor. *Id.* However, unlike the debtor, the non-filing spouse would not be entitled to the protection of Section 522(c). Consequently, whatever net proceeds were received by the non-filing spouse would be subject not only to joint creditors who were not satisfied from the debtor's share of the net proceeds or who did not file timely joint claims but also to creditors with claims against only the non-filing spouse herself.

the former Bankruptcy Act because their interests in the entireties property never became property of the estate. However, the Bankruptcy Code changed the law through its requirement that even property claimed as exempt be included as property of the estate at the inception of the bankruptcy proceeding. The impact of this change upon a Michigan tenancy by the entirety is substantial, for not only does the Bankruptcy Code mandate the immediate transfer of the debtor's interest in the entireties property to the bankruptcy estate irrespective of the non-filing spouse's consent, but it also authorizes the trustee to sell the debtor's undivided interest in the entireties property without her consent. The Bankruptcy Code even permits the trustee to sell the spouse's own undivided interest in the property without her consent under certain circumstances.

*Trickett* overlooked these profound changes in the law and instead just assumed that the entireties estate as recognized in Michigan would continue to exist post-petition. The consequence of this misplaced assumption was the creation of a process that finds no support whatsoever within the Bankruptcy Code. Nothing in the Bankruptcy Code authorizes the "bankruptcy within a bankruptcy" procedure suggested by *Trickett.* Indeed, the procedure suggested by *Trickett* requires one to make assumptions that contradict the express language of the Bankruptcy Code and the attendant legislative history.

As already discussed, the Bankruptcy Code's inclusion of the debtor's interest in entireties property in the bankruptcy estate as required by Section 541(a)(1) leads to the inescapable conclusion that the tenancy by the entirety can no longer exist under Michigan law and that the bankruptcy estate and the debtor's spouse must instead hold their respective interests in the property as tenants in common. Debt-

ors argue that Congress could never have intended this result; they assert that it is a mistake that needs to be corrected. However, even if this were so, recourse lies with Congress, not with the courts.

Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (citing *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)).

\*　\*　\*　\*　\*　\*

If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." *United States v. Granderson,* 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us. *Lamie v. U.S. Trustee,* —— U.S. ——, 124 S.Ct. 1023, 1032 and 1034, 157 L.Ed.2d 1024 (2004).

Moreover, I am not convinced that Congress has made a mistake. In instances where Congress addressed questions concerning the administration of undivided interests acquired from the debtor, it was quite careful to distinguish between how the bankruptcy estate currently holds the interest and how the debtor **had** held the interest. *See, e.g.,* 11 U.S.C. §§ 363(h) and 522(b)(2)(B). In addition, Congress' clear purpose in enacting the Bankruptcy Code

was to strike a balance between the debtor and his creditors. Nothing in either the Bankruptcy Code or the legislative history suggests that a co-tenant's relationship with creditors was also to be protected.

A straightforward interpretation of the Bankruptcy Code dictates that the debtor's interest in entireties property, but not the non-filing spouse's interest, becomes property of the estate immediately upon the commencement of the debtor's bankruptcy proceeding. That interest is held by the bankruptcy estate as a tenant in common with the debtor's spouse because that is what Michigan law requires.[41] The debtor has the option of claiming the interest as exempt under either the Section 522(b)(1) exemptions (*i.e.,* the so-called federal exemptions) or the Section 522(b)(2) exemptions (*i.e.,* the so-called state exemptions). In a Chapter 7 proceeding, the bankruptcy trustee would then administer the undivided interest consistent with the exemption claimed by the debtor. If the debtor chooses the federal exemptions, then the debtor may claim whatever equity there may be in the bankruptcy estate's undivided interest to the extent permitted by Sections 522(d)(1) and (d)(5). Whether the bankruptcy trustee returned the undivided interest to the debtor intact or whether the bankruptcy estate sold the undivided interest pursuant to Section 363(b) (with or without the assistance of Section 363(h)) would depend upon the amount of non-exempt equity in the undivided interest. Either the undivided interest in the former entireties property or cash equal to the debtor's allowed Section 522(d)(1) and (d)(5) exemptions in the undivided interest would then be returned from the bankruptcy estate to the debtor. Whatever was returned would belong to only the debtor. As for the proceeds that the bankruptcy trustee may have realized from non-exempt equity in the undivided interest, the trustee would distribute those proceeds to debtor's unsecured creditors pursuant to Section 726(a) without consideration as to whether any eligible creditor also had a claim against the debtor's spouse.

The process is substantially the same if the debtor were to instead choose the state exemptions permitted by Section 522(b)(2) and claim the undivided interest as exempt pursuant to Section 522(b)(2)(B). In other words, the bankruptcy trustee would: 1) establish the amount of the debtor's allowed exemption in the undivided interest; 2) return the undivided interest to the debtor or liquidate it because its value is in excess of the debtor's allowed exemption; 3) distribute the cash equivalent of debtor's allowed exemption in the undivided interest if it is liquidated; and 4) distribute the remainder of the proceeds to the debtor's unsecured creditors pursuant to Section 726(a) without consideration as to whether any eligible creditor also had a claim against the debtor's spouse.

**41.** I do not conclude that the commencement of a bankruptcy proceeding inevitably leads to the severance of the entireties estate and its replacement with a tenancy in common. For example, the commencement of a bankruptcy proceeding will not sever entireties property owned in New York. The reason why is that New York, unlike Michigan, has modified the common law concerning entireties property to permit not only the unilateral conveyance of one co-tenant's interest without the consent of the other but also the continuation of the entireties estate even though the two co-tenants are no longer married. Indeed, the Michigan legislature and judiciary each has the prerogative at any time to conform Michigan's laws with those of New York concerning entireties property. However, until that prerogative is exercised, I am bound by *Butner* to conclude that the commencement of a bankruptcy proceeding will result in the severance of any property owned as tenants by the entirety in Michigan.

A trustee's administration of the bankruptcy estate's undivided interest in former entireties property under Section 522(b)(1) and under Section 522(b)(2) differs only with respect to the calculation of the debtor's allowed exemption. The amount of a debtor's Section 522(d)(1) and (d)(5) exemptions is simply a function of the bankruptcy estate's equity in the undivided interest. The debtor is allowed as an exemption whatever is the value of the bankruptcy estate's undivided half interest in the former entireties property up to the maximum amount permitted by Sections 522(d)(1) and (d)(5).

In contrast, the Section 522(b)(2)(B) exemption under Michigan law is a function of not only the bankruptcy estate's equity in the undivided interest but also the amount of enforceable joint claims held by creditors against both the debtor and his spouse. The debtor's allowed exemption is the value of the bankruptcy estate's equity [42] in the undivided half interest in the former entireties property minus whatever debts are owed by the debtor jointly with his spouse. The first attempt at establishing the amount of the Section 522(b)(2)(B) exemption would be by the debtor, since it is the debtor who must claim the exemption in connection with the preparation of his schedules. Fed.R.Bankr.P. 4003(a).

*See also,* Official Form 6—Schedule C (Norton Bankruptcy Rules Pamphlet 2003–2004 Ed., 742). The amount would be the difference between the debtor's good faith estimate of the value of the bankruptcy estate's undivided half interest in the former entireties property and the debtor's good faith estimate of the amount of valid unsecured claims against him which are also owed by his spouse.

If the bankruptcy trustee disagreed with the debtor's schedules, then she would file an objection.[43] Fed.R.Bankr.P. 9014 sets the procedural framework within which the objection would be resolved. The trustee's objective would be to minimize the amount of the Section 522(b)(2)(B) exemption claimed by advocating the largest number possible as the amount of joint claims against the debtor and his spouse. Conversely, the debtor's objective would be to maximize the allowable Section 522(b)(2)(B) exemption claimed by him by advocating the smallest number possible as the amount of joint claims against his spouse and him. The trustee would have recourse under both Fed.R.Bankr.P.2004 and 7026–7037 to ascertain the amount of the debtor's joint claims for purposes of calculating his Section 522(b)(2)(B) exemption.[44] The trustee would also have the

---

**42.** In a Chapter 7 proceeding, the trustee accounts for liens and other encumbrances against property in which the bankruptcy estate also has an interest as part of her duty "to collect and reduce to money the property of the estate...." 11 U.S.C. § 704(1). *See also, In re Talbert,* 268 B.R. 811, 816 (Bankr. W.D.Mich.2001). In the context of a claimed Section 522(b)(2)(B) exemption, the Chapter 7 trustee would reduce the gross value of the subject property by the amount of liens and encumbrances and divide the remainder in half. The trustee would then subtract from the bankruptcy estate's half of the remainder the amount of joint claims against the debtor and his spouse to arrive at the allowed amount of the debtor's Section 522(b)(2)(B) exemption.

**43.** I have described the process as being between the debtor and the trustee. However, the process would be the same if any creditor or other party in interest were to object to the allowance of a Section 522(b)(2)(B) exemption by the debtor. *Cf.* Fed.R.Bankr.P. 4003(b).

**44.** While formal discovery is certainly available, it may not be necessary. For example, a trustee *might obtain sufficient information* concerning the amount of joint claims against the debtor and his spouse by informally interviewing some or all of the creditors identified on the debtor's mailing matrix.

option at any time to agree with the debtor as to what should be the amount of the allowable exemption under Section 522(b)(2)(B).

If an agreement cannot be reached, then a hearing would be necessary. At that hearing, both the trustee and the debtor would offer proofs as to the amount of joint claims against the debtor and his spouse with the burden of proof being in favor of the debtor. Fed.R.Bankr.P. 4003(a). The court would consider these proofs simply as an evidentiary issue within the context of the exemption process. A dispute concerning the amount of joint claims for purposes of allowing a Section 522(b)(2)(B) exemption is no different than a dispute concerning the value of the bankruptcy estate's interest in a residence for purposes of allowing a Section 522(d)(1) exemption. Resolution of a dispute between the trustee and the debtor concerning the amount of debt jointly owed by the debtor and his spouse does not require the initiation of a separate claims allowance

procedure and the attendant involvement of creditors holding such claims.[45] The dispute can be resolved between the debtor and trustee alone based upon the proofs offered.

■ I recognize that the procedure I have described has adverse consequences, especially upon the debtor's non-filing spouse. Severance of the entireties property upon commencement of the debtor's bankruptcy proceeding means that the spouse's interest in the former entireties property would no longer be protected from her individual creditors. The non-filing spouse would not even have the benefit of the automatic stay as protection against what could be a sudden race among her creditors to execute against assets that only a day before were beyond their reach. The desire to protect the spouse is perhaps an implicit, if not explicit, reason why other courts have been so reluctant to allow the entireties estate to be eliminated as part of the bankruptcy process.[46]

---

**45.** The "bankruptcy within a bankruptcy" procedure contemplated by *Trickett* has engendered a separate claims allowance process for joint claims filed in response to the "Trickett Order." 14 B.R. at 90–91. I do not see any reason for this process. The issue is between the trustee and the debtor, not the trustee and the joint creditor. The amount of a joint creditor's claim is certainly relevant to the determination of the amount of a debtor's allowed exemption under Section 522(b)(2)(B). However, the amount of the joint claim need not be determined conclusively vis-a-vis the creditor at this juncture. Indeed, it may never be necessary to conclusively determine the amount of the joint creditor's claim. For example, a substantial tax priority claim might absorb whatever proceeds the trustee had available to distribute to creditors pursuant to Section 726(a). If that were to occur, then there would be no need to object to any unsecured claim against the debtor's bankruptcy estate, whether joint or individual. 11 U.S.C. § 705(5).

Treating the amount of joint claims in connection with a Section 522(b)(2)(B) exemp-

tion as an evidentiary issue as opposed to a dispositive issue is not a novel concept. Trustees do this all the time with respect to creditors who claim a lien in property in which the bankruptcy estate also has an interest. If, for example, a debtor claims that the net equity in Blackacre is below the maximum exemption allowed pursuant to Section 522(b)(1) and the trustee asserts that the net equity is in excess of this amount, the trustee does not join the creditor to the dispute in order to conclusively determine the value of that creditor's lien. Rather, the trustee and debtor simply include that dispute as one of the issues that must be resolved between the two of them. In most instances, the dispute is resolved amicably. However, in those instances when an agreement cannot be reached, it is resolved as an evidentiary issue in conjunction with the trustee's contested objection to the debtor's claimed exemption.

**46.** Of course, preserving the entireties estate cannot be justified on desire alone. The Bankruptcy Code itself must support this goal. There also is no assurance that the

Congress did not ignore the non-filing spouse when it crafted the exemption scheme set forth in Section 522. Many of the exemptions described in Section 522(d) permit consideration of not only the needs of the debtor himself but also the needs of his non-filing spouse and other dependents. *See, e.g.*, 11 U.S.C. §§ 522(d)(1), (3), (4), (6), (9), (10), (D), and (E) and (11)(B), (C), and (E). There is nothing in the Bankruptcy Code or the underlying legislative history that reveals a congressional intent to further protect non-filing spouses who own interests in entireties property with their husbands from the consequences of their husband's decision to file a bankruptcy proceeding. If further protection is needed, the appropriate recourse is for the non-filing spouse to either join in her husband's petition or commence her own bankruptcy proceeding.

## CONCLUSION

Trustee's objections to the Section 522(b)(2)(B) exemptions claimed by Debtors is sustained to the extent Debtors contend that the bankruptcy estate's interest in the subject property continues to be held by the bankruptcy estate as a tenant by the entirety. When Debtors filed their Chapter 7 petitions, the interests in the entireties property they owned with their non-filing spouses automatically transferred to their respective bankruptcy estates. These transfers resulted in the severance of the tenancies by the entirety created under Michigan law. Consequently, each bankruptcy estate acquired the

non-filing spouse will continue to enjoy the protection offered to her as a tenant by the entirety even if the commencement of her husband's bankruptcy proceeding did not result in the severance of the entireties estate. Assume, for example, that the debtor elects to exempt his undivided interest in the entireties estate pursuant to Section 522(d)(1) and (d)(5) instead of pursuant to Section 522(b)(2)(B) and whatever other state exemption might be available. If the value of the debtor's interest in the entireties property is greater than the amount of the debtor's allowed exemption, then the trustee would be in a position to sell both the debtor's interest pursuant to Section 363(b) and the non-filing spouse's interest pursuant to Section 363(h). Although Section 363(j) would require the trustee to account to the non-filing spouse for her share of the proceeds, the question remains as to how the non-filing spouse would own those proceeds. Logic suggests that she should receive her share of the proceeds free of whatever interest her husband might claim just as her husband would receive the allowed 522(d)(1) and (d)(5) exemptions in his share of the proceeds free of whatever interest she might claim. Otherwise, her husband and his individual creditors might benefit at the expense of the non-filing spouse. On the other hand, if the non-filing spouse receives her share of the proceeds free of her husband's interest, it follows that the proceeds would no longer be protected as entireties property and therefore would be subject to execution or garnishment by her individual creditors.

Moreover, even if the non-filing spouse were able to block the trustee's Section 363(h) sale of her interest, there might still be sufficient value in the debtor's undivided interest to warrant the sale of that interest alone pursuant to Section 363(b). If the bankruptcy trustee were able to sell that interest, the non-filing spouse and the purchaser of that interest would become co-tenants. Obviously, they could not own the property as tenants by the entirety under Michigan law. Rather, they would own the property as tenants in common. Consequently, the non-filing spouse's interest in the former entireties property would become vulnerable to the non-filing spouse's individual creditors as a result of the bankruptcy trustee's Section 363(b) sale of her husband's interest in the property.

These examples make me wary of any argument to preserve the entireties estate postpetition that is based upon some supposed policy to protect the non-filing spouse's interest in the entireties estate. The better approach is to simply apply state law as the Supreme Court directed in *Butner* and to leave to Congress the unanswered policy questions as to whether the non-filing spouse should herself receive additional protection from the application of that law.

debtor's undivided interest as a tenant in common. The debtors' spouses continued to own their separate undivided interests in the property post-petition. However, the interest each spouse holds is a tenancy in common as well. The bankruptcy estate's and the non-filing spouse's undivided interests in each of the respective properties are equal.

The balance of Trustee's objections are overruled. Trustee is directed to administer the bankruptcy estates' respective interests in the subject property consistent with the procedures set forth in this opinion. If, during the course of that administration, a dispute arises concerning the amount of the exemption that one or more of the debtors may be allowed with respect to the bankruptcy estate's interest in the subject property, then either Trustee or the appropriate debtor may schedule a further hearing to resolve that dispute.

Although Mr. Gillis originally claimed the bankruptcy estate's interest in the Hersey property as exempt pursuant to Section 522(b)(2)(B), he amended his schedules on July 16, 2003 to claim this interest as exempt pursuant to Section 522(b)(1) and 522(d)(1). Based upon Mr. Gillis' schedules alone, it would appear that his exemption should be allowed. Mr. Gillis has set the total value of the Hersey property at $30,000 and he has set the value of the bankruptcy estate's interest in that property at $15,000. Given that the available exemption under Section 522(d)(1) is $17,425, it is reasonable to assume that the bankruptcy estate's half interest in the Hersey property should be transferred back to Mr. Gillis as an allowed exemption without further administration by Trustee. Indeed, the docket indicates that Trustee Boyd has withdrawn his objection to Mr. Gillis' amended Section 522(d)(1) exemption of the bankruptcy estate's interest in the Hersey property.

Ms. Spears and Messrs. Sedgewick and Brehm all continue to claim the bankruptcy estate's half interest in their residences as exempt pursuant to Section 522(b)(2)(B).[47] Their schedules indicate that the value of the bankruptcy estate's

**47.** None of these three debtors have expressly identified Section 522(b)(2)(B) as the basis for their exemption in the bankruptcy estate's interest in the former entireties property. Indeed, only two of these three debtors included anything in their Schedules C that could be interpreted as a Section 522(b)(2)(B) exemption claim. Mr. Sedgewick supplemented his MCLA 600.6023(1)(h) homestead exemption in Schedule C with "*In re Trickett,* 14 B.R. 85 (Bankr.W.D.Mich.1981) re: individual creditors. Debtor reaffirming joint debts." Ms. Spears referred only to MCL § 600.6023(1)(h) in the column of Schedule C that required her to specify the law providing the claimed exemption. Finally, Mr. Brehm cited "*Hoyt v. Winstanley,* 221 Mich. 515, 191 N.W. 213 (1922)" in his Schedule C as the claimed basis for his exemption. *Hoyt* is an early Michigan Supreme Court case which recognizes the invulnerability of entireties property to creditors holding claims against only one of the spouses of the entireties estate.

If a debtor intends to avail himself of the exemption afforded by Section 522(b)(2)(B), the debtor should identify the interest claimed as exempt in the column marked "Description of Property" in Schedule C. For example, the description might be "The undivided interest in Blackacre that Debtor owned pre-petition as a tenant by the entirety with his spouse." The debtor should then indicate in the second column of Schedule C that Section 522(b)(2)(B) is the statutory authority for the exemption claimed. If Blackacre qualified as a homestead under MCLA § 600.6023(1)(h) as well, the debtor should also indicate in the second column of Schedule C that MCLA § 600.6023(1)(a) is an alternative basis for the claimed exemption. The debtor should then set forth in the fourth column of Schedule C his good faith estimate of the value of the bankruptcy estate's half interest in Blackacre (*i.e.,* the fair market value of Blackacre less all liens against Blackacre divided by 2). Finally, the debtor should designate in the third column of Schedule C his good faith estimate as to the amount of his Section 522(b)(2)(B) exemption (*i.e.,* the fair market value of Blackacre less all liens against Blackacre di-

interest in each of the properties is significant.[48] As for the amount of joint claims held by creditors against each debtor and his or her respective spouse, Mr. Sedgewick's schedules indicate that two of his unsecured creditors also have claims against his wife. The scheduled amount of these two claims total $1,272.57. As for Mr. Brehm's and Ms. Spears' schedules, they are ambiguous. Neither debtor has bothered to delineate which of the scheduled claims are owed individually and which are owed jointly with his or her spouse although the schedules submitted by these two debtors requires that information. *See*, Fed.R.Bankr.P. 1007(b)(1) and Official Form 6—Schedules D, E, and F (Norton Bankruptcy Rules Pamphlet 2003–2004 Ed.).[49]

With respect to the bankruptcy estate's interest in the Rapid City property, Mr. Sedgewick's concession that there are creditors with claims against his wife and him means that Trustee will have to proceed with his objection to Mr. Sedgewick's claimed exemption in the bankruptcy estate's interest in the Rapid City property. Trustee may, if he chooses, further investigate other claims against Mr. Sedgewick to determine whether some or all of those claims may also be joint claims. At a minimum, Trustee will need to recover for the benefit of the estate the $1,272.57 Mr. Sedgewick acknowledges as joint claims. Trustee may do so by disposing of the bankruptcy estate's interest in the Rapid City property pursuant to Section 363(b) (with or without the assistance of Section 363(h)), or by reaching some settlement with Mr. Sedgewick or his spouse for the payment of this amount to the bankruptcy estate. Whatever is realized by the estate in connection with Trustee's administration of the bankruptcy estate's interest in the Rapid City property will be added to whatever other proceeds Trustee has realized from his efforts to liquidate property of this bankruptcy estate and will be distributed by Trustee pursuant to Section 726(a).

As for the Section 522(b)(2)(B) exemptions claimed by Mr. Brehm and Ms. Spears, Trustee cannot at this point ascertain whether it is appropriate to administer the bankruptcy estate's interests in the subject properties because their schedules are incomplete. Debtors Spears and Brehm will be given twenty (20) days from the date of service of this opinion and attendant order to amend Schedules D, E, and F to reflect whether each claim scheduled is an individual obligation of only the

---

vided by two minus the total amount of debt owned jointly by debtor and his spouse). The debtor would also designate in the third column of Schedule C the amount of his claimed homestead exemption (up to a maximum of $3,500) if the debtor intended to rely upon MCLA § 550.6023(1)(h) as an alternative basis for claiming an exemption in the subject property.

Although none of the exemptions claimed by Messrs. Sedgewick and Brehm and Ms. Spears in their residences meets the suggested standard that I have just described, each is sufficient under the circumstances to be treated as including a claimed Section 522(b)(2)(B) exemption in the estate's interest in the residential property that each had formerly held as a tenant by the entirety. If further clarification of their Schedules C is necessary, then Debtors may amend their schedules. Fed.R.Bankr.P. 1009(a); *see also* Fed.R.Bankr.P. 4003(b).

**48.** Mr. Sedgewick scheduled the total value of the equity in the Rapid City property at $61,000. Mr. Brehm scheduled the total value of the equity in the Wexford County property at $84,000, and Ms. Spears scheduled the total value of the equity in the Tustin property at $70,000.

**49.** Ms. Spears claims that she has no joint creditors. Spears' 6/27/03 Brief, p. 15. If true, then she needs to amend her schedules to reflect this. Moreover, Trustee must be given the opportunity to verify her averment.

debtor or a joint obligation with his or her spouse. Trustee also may, if he chooses, further investigate any claim that either of these debtors identify as an individual claim to verify that it is not in fact a joint claim. If either debtors' schedules continue to indicate after correction that there are no joint claims and Trustee is otherwise satisfied that that debtor has no joint obligations with his or her spouse, then I would expect Trustee to withdraw his objection to the claimed Section 522(b)(2)(B) exemption and allow the bankruptcy estate's undivided interest in the subject property to transfer back to the debtor. If, however, either of the debtors' schedules indicate after correction that the debtor does have one or more joint obligations with his or her spouse, then I would expect Trustee to proceed with the administration of the bankruptcy estate's interest in the relevant property in the same manner as I have described in connection with the bankruptcy estate's interest in the Rapid City property claimed as exempt by Debtor Sedgewick.

A separate order will issue consistent with this opinion.